[Sac. No. 798. Department One. — March 12, 1901.]

In the Matter of the Estate of HENRY C. NELSON, Deceased. E. T. CRANE, Special Administrator, etc., et al., Appellants, v. J. W. GOAD, Executor, etc., et al., Respondents.

ESTATES OF DECEASED PERSONS — CONTEST OF WILL — CODICIL — VERDICT OF JURY — CONFLICTING EVIDENCE. — Upon the contest of a will, under a petition for the revocation of the probate thereof, a verdict that the testator was of sound and disposing mind when he made a codicil to the will cannot be disturbed upon appeal, where there is sufficient evidence clearly to support it, notwithstanding conflicting evidence to the contrary.

ID. — PRIVILEGED COMMUNICATIONS — ATTENDING PHYSICIAN — INCOMPETENT EVIDENCE. — The physician who attended the testator during his last illness, and whose information as to his condition was ac-

quired during such attendance for the purpose of prescribing for him as a physician, is incompetent to testify as to his condition, in answer to questions asked by the contestants, tending to show that the testator had not the mental capacity to make a will or a codicil thereto.

ID. — INFORMATION FOR BENEFIT OF PATIENT — REQUEST FOR DISCLOSURE NOT IMPLIED. — The information which a physician acquires from his patient, for the purpose of prescribing for him, is given for the benefit of the patient alone, and not for the purpose of creating a right in others, and does not carry any implied request to disclose it in behalf of others in matters with which it is wholly disconnected.

ID. — COMMUNICATIONS TO ATTORNEY RELATING TO WILL — INTENTION OF DISCLOSURE — IMPLIED REQUEST. — The communications made by the testator to an attorney preparatory to drawing a will or a codicil thereto, and his instructions concerning it, are not to be regarded as confidential and privileged, it being clearly manifest that it was the intention of the testator that the communication should be disclosed, if any occasion therefor should be presented, and that the attorney was impliedly requested to tell what was necessary to establish the integrity of the will.

ID. — CONSTRUCTION OF CODE — IMPLIED CONSENT OF CLIENT. — The consent of the client to the disclosure of communications made by him to his attorney, provided for by the terms of section 1881 of the Code of Civil Procedure, may be implied, as well as expressed.

ID. — IMMATERIAL EVIDENCE AS TO CONDUCT OF EXECUTORS — UNDUE INFLUENCE NOT SHOWN. — Evidence that executors named in the codicil sought prior thereto to obtain the management of the estate, is properly excluded as irrelevant and immaterial, and could not have any tendency to show undue influence over the testator, where no offer was made to show that they had any interview with the testator, or spoke with him in reference to the codicil, or to the disposition of his property.

ID. — INSTRUCTION AS TO PRESUMPTION OF SANITY — BURDEN OF PROOF — VERDICT. — It was proper to instruct the jury that the legal presumption of sanity was matter of evidence of the testator's sanity, in favor of the legatees and devisees under the will, until the contrary was proved by a preponderance of evidence, and that the one who alleges the testator's unsoundness of mind must prove it. The fact that the jury found a verdict of incompetency when the will was executed, upon uncontradicted evidence, and of soundness of mind when the codicil was executed, upon conflicting evidence, cannot affect the propriety of the instruction.

ID. — EFFECT OF PRIOR INCAPACITY — INSTRUCTIONS. — Where the court instructed the jury that if they found that the testator was not of sound mind when the will was executed, they might consider that fact in determining whether he was of sound mind when the codicil was executed, it was proper to refuse a requested instruction, that if they so found, the presumption was that he was of unsound mind

on the day when the codicil was executed. Such request improperly disregarded the evidence before the jury with reference to the capacity of the testator at the date of the codicil.

ID. — CONSISTENCY OF VERDICT — TEMPORARY INCAPACITY. — Where there was evidence before the jury, from which they could find that the incapacity of the testator when he executed the will was only temporary, there was no inconsistency in finding that he was then incompetent, and in also finding that he was of sound mind three days later, when the codicil was executed.

ID. — HARMLESS ERROR IN INSTRUCTION — SCRUTINY OF TESTIMONY OF SUBSCRIBING WITNESS AS TO UNSOUNDNESS OF MIND. — An instruction that "the testimony of a witness who has solemnly subscribed a will as an attesting witness, and afterwards endeavors to overthrow it, should be closely scrutinized," is open to objection; but the error in giving it is harmless, as it merely stated a well-recognized rule, by which the jury would be governed in the consideration of such testimony without the instruction.

ID. — INSTRUCTIONS — TESTAMENTARY CAPACITY — CONTENTS OF WILL NOT TO BE CONSIDERED. — It was proper to instruct the jury, that in determining the question of the testamentary capacity of the testator, they were not to consider the character of its provisions, or the reasons and motives of the testator for making the disposition of his property therein made, and that if he had testamentary capacity, the law must give effect to his will.

ID. — CONSISTENCY OF INSTRUCTIONS — CHARACTER OF WILL — MATTER OF LAW. — A statement to the jury, that the will before them could not be considered, as matter of law, inequitable, was not inconsistent with the instructions to them, not to consider the character of its provisions; but merely emphasized the statement that it was not a matter to be considered by the jury; and in the absence of an exception to such instruction, it cannot be considered erroneous.

ID. — INSTRUCTION AS TO SOUNDNESS OF MIND — "EXTREME" BODILY OR MENTAL WEAKNESS. — An instruction to the jury, that "it is soundness or unsoundness of mind, and not any particular state of bodily health," that must control their judgment, and that "a man may be in a state of extreme bodily or mental weakness or disease, and yet he may possess sufficient understanding to direct how his property may be disposed of," is not rendered erroneous by the use of the word "extreme," which in actual use is often employed, not as a superlative, but as the opposite of "moderate." The connection in which the word is used is to be considered, and not merely its philology. The jury could not be misled, where the word was used as synonymous with the possession of "sufficient understanding to direct how his property should be disposed of."

ID. — UNDUE INFLUENCE — WANT OF SUFFICIENT EVIDENCE — REFUSAL OF INSTRUCTION. — An instruction upon the subject of undue influence is properly refused, where there is not sufficient evidence before the jury tending to prove undue influence.

ID. — CIRCUMSTANTIAL EVIDENCE — SUSPICION — CONJECTURE — PROOF OF UNDUE INFLUENCE. — Circumstantial evidence must do more than raise a suspicion, or a mere conjecture or surmise of undue influence, in order to justify the submission of that question to the jury. In order to establish undue influence in the execution of a will or codicil, there must be more than mere proof of interest and opportunity, and of the testator's mental weakness, and substantial proof is required of a pressure which overpowered the volition of the testator when the will was executed.

ID. — ORDER DENYING REVOCATION OF PROBATE — TIME FOR APPEAL — DISMISSAL. — An order denying the revocation of the probate of a will, taken more than sixty days after its entry, must be dismissed.

APPEAL from orders of the Superior Court of Colusa County denying the revocation of the probate of a will and denying a new trial of a contest thereof. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

A. A. Moore, Crittenden Thornton, E. A. Bridgford, Clunie & Bridgford, E. T. Crane, and Ernest Weyand, for Appellants.

Platt & Bayne, H. A. Powell, and Edwin Swinford, for Respondents.

HARRISON, J. — The last will and testament of the above-named decedent, bearing date October 17, 1897, and a codicil thereto bearing date October 20, 1897, were admitted to probate, and letters testamentary thereon issued, November 29, 1897. In October, 1898, the appellants herein filed a petition for the revocation of this probate, upon the grounds that at the respective dates of the instruments the deceased was not of sound and disposing mind, and that the said instruments, and each of them, were made under the duress and undue influence of certain parties benefited thereby. Issues were joined upon this petition, and those relating to the competency of the deceased were submitted to a jury, who rendered a verdict that the deceased was not of a sound and disposing mind at the time of making the will on the seventeenth day of October, and that he was of sound and disposing mind at the time of making the codicil on the twentieth day of October. These verdicts were approved by the court, and it also found that neither the will of October 17th, nor the codicil of October 20th, was executed under duress or undue influence on the part of or on

behalf of any one.    The court thereupon rendered its judgment, denying the petition of the contestants and affirming the probate previously made.    A motion for a new trial made by the contestants was denied by the court, and the contestants have appealed.

The decedent was a resident of Colusa County, and at the time of the execution of the will and codicil was seventy-nine years of age.    In 1896 he suffered a stroke of apoplexy, and was thereafter enfeebled in body.    In September, 1897, he went to San Francisco for the purpose of receiving medical treatment, and took rooms at the Langham Hotel, where he immediately placed himself under the care of Dr. Galvan, and remained under his medical treatment until his death, October 31st.    During the night of October 16th his condition became worse, and on the morning of the 17th an attorney was summoned to his room for the purpose of drawing his will.    After receiving certain information from Dr. Galvan, the attorney dictated to him the will of that date, which the doctor then wrote down and read to the testator.    The testator indicated his approval thereof, and Dr. Galvan wrote his name upon the paper, and with the testator touching the pen, made a cross, near which the doctor wrote the words, "His mark."    The doctor then wrote out the attestation clause, as dictated by the attorney, and it was signed by the witnesses.    October 20th, Mr. James W. Goad came from Colusa in response to a telegram to that effect, for the purpose of seeing Mr. Nelson.    Mr. Goad was an attorney at law, and had been consulted by Nelson about drawing his will before the latter came to San Francisco.    He went to the Langham Hotel, and was shown by Dr. Galvan the will of October 17th.    Upon seeing Mr. Nelson, the latter said to him that the will made the proper disposition of his property, but that he desired to have Mr. Goad as one of his executors, and wished him to change it in that respect.    He also named Mr. Smith and Mr. Jones as persons whom he also wished to be his executors.    Mr. Goad thereupon prepared the codicil of October 20th, and after reading it to Nelson, the latter said that it was all right, and upon being propped up in bed, told Mr. Goad to write his name to it.    Goad thereupon wrote Nelson's name to the codicil, and gave him a pen with which to make his mark.    Nelson took the pen, and after making a cross near his name, wrote what purported to be his own name underneath the other.    Upon

Goad's inquiry as to whom he wished as witnesses, he named Goad himself, but upon Goad's mentioning that as he was named as executor, he had better name some one else, he named Dr. Gray and Mr. Murphy, who were present in the room, and they thereupon signed as witnesses thereto.

1. The verdict of the jury, that the decedent was of sound and disposing mind at the time of his execution of the codicil on October 20th, was given upon a consideration of conflicting evidence, and is therefore not open to review upon this appeal. Counsel for appellants state in their brief that the testimony of the witnesses for the respondents is, in substance and effect, "that Nelson had sufficient strength of mind and vigor of body to indicate his wishes to Goad at great length, and with absolute precision of detail; that those wishes were indicated without prompting or suggestion, and that he was the complete master of the situation." Any testimony to the contrary of this would only raise a conflict of evidence, upon which the verdict of the jury was conclusive.

2. Dr. Galvan was called as a witness for the contestants, and was asked certain questions, tending to show that the testator had not the mental capacity to make a will. He testified that the information he had upon these matters was acquired by him from the decedent, and from observing him while he was in attendance upon him for the purpose of prescribing for him as his physician; and upon the objection of the proponents of the will, that, under the provisions of subdivision 4 of section 1881 of the Code of Civil Procedure, the witness was incompetent to give this testimony, his answers to the questions were excluded. Under the authority of *Estate of Flint*, 100 Cal. 391, and *Estate of Redfield*, 116 Cal. 637, this ruling was correct.

The proponents afterwards called as a witness Mr. Goad, who had drawn the codicil of October 20th, and, against the objection of the contestants that he was incompetent under section 1881, the court permitted him to testify concerning his interview and conversation with Nelson preparatory to drawing the codicil, and the instructions which he received from Nelson therefor. The appellants do not seriously contend that Goad was incompetent to give testimony respecting these matters, but they say that the ruling of the court upon the testimony of the two witnesses was contradictory and incon-

sistent; that if the testimony of Goad was admissible, that of Galvan should also have been received.

The grounds, however, upon which the court made its rulings in regard to the competency of the two witnesses are not the same, and the rules by which Galvan's testimony was excluded are inapplicable to the testimony of Goad. The communication, as well as the relation between the attorney and his client, ceases to be confidential when it is clearly manifest that it is the intention of the client that the communication should be disclosed, if any occasion therefor should be presented. The consent of the client to such disclosure, which is provided for in section 1881, may be implied as well as express, and by requesting his attorney to draw his will the client impliedly asks him to do and say whatever may at any time and place be requisite for the purpose of establishing the integrity of the will. Goad had prepared the codicil under the directions of the testator, and by employing him as his attorney for this purpose, the testator had waived the protection of the statute, and released the attorney from the obligation of secrecy as fully as if the attorney had become a subscribing witness to the will. The client thereby makes the attorney the medium through whom the right which he seeks to create may be established. There was no such relation between Dr. Galvan and Nelson. The information which the doctor had acquired from Nelson was for the purpose of prescribing for him as his physician, and could be used by him for only that purpose. It had no connection with the preparation of the codicil, and Dr. Galvan was as much precluded from disclosing it upon the issues respecting the same as if he had known nothing about the codicil. The information which a physician acquires from his patient for the purpose of prescribing for him is given for the benefit of the patient alone, and not for the purpose of creating a right in others, nor does it carry with it any implied request to disclose the same in behalf of others in matters with which it is totally disconnected.

The argument of the appellants, that inasmuch as Dr. Galvan prepared the will of October 17th under the direction of Nelson, his incompetency was thereby removed as fully as was that of Goad, loses its force, in view of the fact that the jury found in favor of the contestants upon that instrument. Any error that may have been committed in reference to the issues thereon is not available to the appellants. Galvan had nothing

to do with the preparation of the codicil, and the testimony sought from him was not rendered competent, upon the issues upon the codicil, by reason of his having prepared the original will. In all the matters relating to the codicil there was no relation between him and Nelson from which there could be implied any consent on the part of Nelson to his disclosing the information which he had acquired as his physician.

3. The contestants sought to show by Dr. Galvan that after the execution of the will on the 17th, and prior to the 20th, Jones and Smith, who are named as executors in the codicil, had sought to obtain from him the management of the estate. They also offered to show that, after the execution of the codicil, Jones had stated that the reason the codicil was made was that they wanted some one at Colusa, rather than at San Francisco, to handle the property. Upon the objection of the proponents that the matters thus sought were irrelevant and immaterial, the court excluded the answers. The appellants now urge that this testimony was relevant and material upon the issue of undue influence, inasmuch as the answers to these questions would show a motive and desire on the part of these persons to procure the execution of the codicil, in which two of them were named as executors, in order that they might obtain the control and management of the estate. The contestants did not, however, offer to show that either of these persons had any interview with Nelson, or ever spoke to him, or to any one for him, with reference to the codicil, or the disposition of his property, and in the absence of any evidence of that nature, it could be only the merest conjecture that they had anything to do with the execution of the codicil, or attempted to influence Nelson in making the same, or in the disposition of his property.

4. In its instructions to the jury, after stating to them that the issues for their determination were, whether Nelson was of sound and disposing mind at the time of the execution of the will and the codicil, the court further stated to them that every one has the right to dispose of his property according to his own desires, and that if there is no defect of testamentary capacity, the law must give effect to his will, irrespective of its provisions, or of his reasons or motives for making such disposition; that the jury were not at liberty to consider the character of its provisions, but were solely to determine whether it was his will. It is contended by the appellants that these gen-

eral statements respecting testamentary disposition, and instructing the jury that they are not at liberty to consider the provisions of the will, were an argumentative instruction by the court in support of the validity of the will. We do not so consider the instruction. It was very proper for the court to call the attention of the jury to the issues that they were called upon to decide, and to confine their deliberations to the evidence, which alone could be considered by them in giving their verdict. In these statements to the jury the court made no reference to the evidence that had been given upon the issue submitted to them, but limited its remarks to cautioning the jury against allowing their verdict to be influenced by matters which it was not proper for them to consider. Its subsequent statement, to the effect that the will before them could not be considered, as matter of law, to be inequitable, was not inconsistent with these instructions. It merely emphasized the previous statement, that it was not a matter to be considered by the jury. It may be added that the appellants took no exception to this part of the instruction.

5. One of the instructions given to the jury was as follows: "It is soundness or unsoundness of mind, and not any particular state of bodily health, that must control your judgment. A man may be in a state of extreme bodily or mental weakness and disease, and yet he may possess sufficient understanding to direct how his property should be disposed of. The soundness of mind required by law to enable a man to make a will is not necessarily that soundness which men in good health and vigor possess."

Appellants contend that by this instruction the jury were, in effect, told that Nelson was competent to make a will, notwithstanding they should find that he was upon the very point of mental extinction or dissolution; and they base their argument upon the proposition that the word "extreme" is a word which is itself superlative in meaning, and implies a degree of the quality named which admits of nothing higher or greater.

Whatever may have been the original use of the word, its distinctively superlative meaning was lost at a very early day, and, throughout the various stages of English literature, down to the present time, has been employed as a word susceptible of different degrees, and which itself takes on a superlative form. The word "extremest" is used by Shakespeare many times in his plays, and is also found in the writings of such

modern authors as Gladstone, Proctor, and Herbert Spencer. "Extreme"— from the Latin *extremus*, like its Saxon counterpart, "utmost"=="outermost,"—was originally an adjective of locality. It is only by a transferred and secondary application that it is used as the attribute of a quality or condition. Although, from its derivation, it indicates a superlative degree, in actual use it is often employed as the opposite of "moderate," and to indicate a very high degree, or as the equivalent of "excessive" or "very far advanced." We speak of extreme old age without meaning that the person cannot live any longer, and when we say that a person is in extreme peril, or necessity, or penury, we do not mean that there is no higher degree of that condition, or that he is unable to endure any higher degree thereof. The "extreme cruelty" which authorizes a judgment of divorce is itself defined by the statute to mean only "grievous" bodily injury or mental suffering.

Philology is, at best, an unsafe criterion for ascertaining the meaning of words which are in common use, and the definition thus obtained is always subordinate to the meaning derived from the context, or from the circumstances under which the word is used. We do not think that, in the connection in which this word was used in the above instruction, the jury could have understood that the court intended them to find that Nelson was capable of making a will, if it should appear to them that he was on the point of mental dissolution. They were told in the preceding sentence that his soundness or unsoundness of mind was the issue submitted to their judgment, and the sense in which these words were used in this instruction is given in the next clause of the very sentence in which they are found, wherein the extreme mental weakness here referred to is stated by the court to be that in which the man "may possess sufficient understanding to direct how his property should be disposed of."

6. The court gave the following instruction to the jury:—

"On the trial of the question as to whether a person was of sound mind at the time of the execution of his will, it is a presumption of law that the person was of sound mind at that time, and the legatees and devisees under the will are entitled to such presumption as a matter of evidence. The legal presumption is, that every person is of sound mind until the contrary is proven by a preponderance of evidence, and he who alleges such unsoundness must prove it."

The contestants excepted to this instruction, and in support of their exception have argued, in their brief herein, that because the jury found that Nelson was incompetent at the making of the will of October 17th, the court was not authorized to instruct them that there was any presumption of his sanity. It must be borne in mind, however, that the instruction was given by the court before the jury had rendered their verdict, and at the time it was given the court could not know how they would regard the evidence. If it be conceded, as claimed by appellants, that the evidence in reference to his want of capacity on October 17th was without contradiction, it was still the duty of the court to submit the evidence to the jury for their verdict thereon. At the time the instruction was given, no fact had been established which would repel this presumption of sanity, and the instruction itself informed the jury that the presumption was only a matter of evidence, which would be overcome by a preponderance of evidence to the contrary.

The instruction upon this point requested by the contestants, "If you find that the testator was, on the seventeenth day of October, 1897, of unsound mind, the presumption is that he was of unsound mind on the twentieth day of October, 1897," would have been, in effect, to tell the jury to disregard the evidence before them with reference to his capacity on the 20th, and was properly refused. The court had already instructed them that if they found that he was not of sound mind at the time of making the will of October 17th, they might consider that fact in determining whether he was of sound mind at the time of making the codicil of October 20th, and thus gave to the contestants the right to have the weight of this presumption considered with other evidence.

The court had also given to the jury the following instructions, to which no exception was taken: —

"The alleged will and codicil having been admitted to probate, the presumptions of law are, that said will was legally executed, and that said Nelson was of sound and disposing mind at the respective dates of the execution of said will and codicil, and the defendants have the right to rely upon such presumptions of law until they have been overcome by evidence. The fact, however, that said alleged will and codicil have been admitted to probate in no way deprives the petitioners here of their right to contest the validity of the will.

and codicil, and if from the evidence you are satisfied that his will was not executed in accordance with law, or that said Nelson was not at said times of sound and disposing mind, you will so find, notwithstanding the fact that said alleged will and codicil have heretofore been admitted to probate as the last will of said testator."

There was nothing inconsistent in the finding by the jury that Nelson was competent at the time of making the codicil and incompetent on the 17th of October. There was evidence before them from which they could have found that his condition on the 17th was only temporary.

7. While the instruction that "the testimony of a witness who has solemnly subscribed to a will as an attesting witness, and afterwards endeavors to overthrow it, should be closely scrutinized," is open to objection, it is not sufficient, under the circumstances of the present case, to justify a reversal of the order. The court did not designate any witness, or point out any particular testimony to which this instruction was directed, and it avoided giving any expression of opinion upon the weight to which such testimony was entitled, or the credit to be given to any of the witnesses. It merely stated a well-recognized rule to be observed by the jury in the consideration of such testimony, and, as was said in reference to a similar instruction in *People* v. *Newcomer*, 118 Cal. 263, "it could not possibly have done any harm; for it was merely telling the jury to do certain things which jurors would evidently do without being so told."

8. There was no evidence before the jury which would have justified the court in submitting to them an issue upon the question of undue influence, and the court very properly declined to submit this issue to them. The only evidence that is claimed by the appellants to authorize the submission of this issue is that which tended to establish the mental and physical infirmity of Nelson, and that those who were benefited by the codicil were the only persons who had access to him, and that Mr. Goad, before drawing the codicil, had made inquiries of him as to his desires in reference to the appointment of executors. It was not shown that either of the beneficiaries spoke to Nelson upon the subject of his will, or that Mr. Goad made any suggestion to him as to the disposition of his property, or as to the persons who should be appointed as his

executors. "The presumption of undue influence is not raised by proof of interest and opportunity alone. In order to set aside a will for undue influence, there must be substantial proof of a pressure which overpowered the volition of the testator at the time the will was made." (*Estate of Langford*, 108 Cal. 608.) "In order to establish that a will has been executed under undue influence, it it necessary to show, not only that such undue influence has been exercised, but also that it has produced an effect upon the mind of the testator by which the will which he executes is not the expression of his own desires." (*Estate of Calkins*, 112 Cal. 296.) Weakness of mind may afford an opportunity for the exercise of undue influence, and when it appears that such influence has been exerted upon a testator, may be evidence tending to show that it affected his acts. But, unless there is some evidence of an actual attempt to exercise some undue influence upon him, the proof of his mental weakness is insufficient to establish more than a conjecture that the will is a result of undue influence. "Circumstantial evidence must do more than raise a suspicion. It must amount to proof, and such evidence has the force of proof only when circumstances are proven which are inconsistent with the claim that the will was the spontaneous act of the alleged testator." (*Estate of McDevitt*, 95 Cal. 17.) "In order to justify the submission of any question of fact to a jury, the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged." (*Janin* v. *London etc. Bank*, 92 Cal. 14.[1])

The appeal from the order denying the revocation of the probate was taken more than sixty days after its entry, and must therefore be dismissed. The order denying a new trial is affirmed.

Van Dyke, J., and Garoutte, J., concurred.

Hearing in Bank denied.

---

[1] 27 Am. St. Rep. 82.