SPECIAL INDEMNITY FUND of the State of Oklahoma, administered by the State Insurance Fund, Petitioner,

v.

Donald THOMPSON and the State Industrial Court of the State of Oklahoma, Respondents.

No. 39708.

Supreme Court of Oklahoma.

Jan. 9, 1962.

Mont R. Powell, James Khourie, Oklahoma City, for petitioner.

Ira "Eph" Monroe, Clinton, for respondents.

DAVISON, Justice.

At issue in this proceeding is the correctness of the trial tribunal's order commuting into a lump sum one-fourth of the unpaid balance due claimant under an accumulative award against the Special Indemnity Fund (hereinafter called Fund).

As a result of a mishap which occurred when he was still in high school claimant lost the sight of his left eye. While at work for the last employer on July 31, 1960, he sustained an accidental injury to his right arm which required an amputation. In the compensation proceeding against the last employer claimant recovered on No-

vember 10, 1960, an award for $350 in temporary total disability (10 weeks at $35 per week) and $6,000 for the loss of his right hand (200 weeks at $30 per week.) On January 5, 1961, the trial judge found him to be permanently totally disabled from the cumulative effect of his pre-existing impairment (in the eye) considered in combination with the disability attributable to the last injury standing alone. On the basis of this determination an award was entered against the Fund granting claimant $15,000 (500 weeks at $30 per week) less $6,350 previously adjudged against the last employer, or the sum of $8,650. Both awards became final on failure of the aggrieved parties to appeal to the trial tribunal en banc, or to bring an original action in this court.

On January 10, 1961, claimant filed a motion to commute into a lump sum the unaccrued portion of the award against the employer. The matter was later submitted to joint petition, by the terms of which claimant became entitled to immediate payment of all unmatured installments in the total sum of $4,380. This settlement was approved by order of January 30, 1961, and the receipt evidencing full payment was filed on February 3, 1961. On cessation of periodical benefits from the last employer, the Fund commenced payments under the award made against it. See in this connection Special Indemnity Fund v. Bryant, 205 Okl. 630, 239 P.2d 1014.

On March 10, 1961, claimant filed his motion to commute into a lump sum one-fourth of the unaccrued installments under the award against the Fund. At the time of the hearing on this motion (April 20, 1961) the unpaid balance of unmatured benefits amounted to $8,177 (of which sum $6,689.50 was due claimant and the remainder of $1,487.50 applied on the attorney's fee.) The commutation so sought was allowed by an order of the trial tribunal en banc.

The evidence, which consists solely of claimant's testimony, stands wholly undisputed. The Fund did not present any evidence in opposition to the motion.

Claimant is 28 years of age. He is married and has two sons. The older child is 27 months old, and the younger, 17 months. Claimant's wife is a junior in college, taking physical education as a major and "business" as a minor. She is expected to graduate in the spring of 1962 and plans to pursue a teaching career. Neither claimant nor his wife have been gainfully employed. He has not worked, nor earned any money, since his injury in July of 1960; she has received from the Federal Government "a mighty little amount" in a students' loan. After paying the attorney's fee, claimant realized from the settlement with his employer about "thirty-six or thirty-seven hundred dollars" and used "about half of it" for payment of debts incurred "to live on" following his injury, Of the total settlement he had at the time of the hearing about "eight or nine hundred dollars" left; the remainder was spent on current living expenses.

Claimant has been a licensed pilot for an undisclosed number of years. Despite his physical handicap, he has been able to continue flying with the aid of an artificial prosthesis. In the last two months before the hearing he had flown "about six hours." With the money to be realized from a commutation he intends to purchase a small airplane equipped with a crop spraying device, and hopes to earn enough in the business of aerial spraying to "pay for my plane just about this summer." He has made a payment of $500 on a plane, but is unable to borrow the entire balance needed. Even if the award were commuted, he would still require a loan to obtain the rest of the money for the purchase price of the plane. Claimant also desires to apply some of the funds to help his wife "through her last year of school."

The Fund contends that the order of commutation was erroneous because there is "no showing of extreme hardship" as required by 85 O.S.Supp.1959 § 172. The cited statutory enactment provides in pertinent part:

"* * * Provided that whenever an injured employee receives an award in

excess of Seven Thousand Five Hundred ($7,500.00) Dollars payable out of the Special Indemnity Fund, said injured employee, *for good cause shown, in cases of extreme hardship,* may have said award commuted to a lump sum payment by permission of a majority of the members of the State Industrial Commission (now Court). Said lump sum payment not to exceed twenty-five (25%) per cent of the total award payable by the Special Indemnity Fund. * * *" (Emphasis ours.)

What constitutes "good cause" for relief and presents a situation characterized by "extreme hardship," within the meaning of the quoted enactment, are not definable terms of fixed and inflexible contents or meaning. They necessarily depend upon the facts and circumstances peculiar to each case, and must be determined therefrom by "the majority of the members" of the trial tribunal. Since our function on review is confined, by force of statute, to an inquiry into errors of law, a trial tribunal's finding on an issue of fact may not be disturbed by this court except when unsupported by competent evidence. 85 O.S. 1951 § 26; In re Greer, Okl., 356 P.2d 356, 359; Fullhart Maytag Company v. Stapleton, Okl., 356 P.2d 350, 353.

As disclosed by the record claimant's family of four persons, although apparently not in destitute conditions, is presently without a regular provider. They have no source of income other than the weekly benefits of $30 payable under the award against the Fund. In his present physical condition claimant has not been able to engage in gainful employment and his activities are limited; his wife is not engaged in any gainful occupation but is preparing herself for a teaching career which will ultimately enable her to assist in earning a livelihood for the family. Neither claimant nor his wife are receiving any assistance, private or public, and must depend on their own resources to sustain life for themselves and their children. From the evidence adduced in the proceedings, it is entirely reasonable to conclude that claimant requires, and will use, his lump-sum payment for the purpose of rehabilitation, i. e., to obtain means of producing income.

The Fund urges that (a) claimant is free from pressing debts, and (b) it is "imprudent" to allow his engagement in aerial spraying because of an incident hazard due to his physical impairments. The latter factor presented a matter resting within the discretion and judgment of the trial tribunal who is the sole arbiter of facts. Although it is true that claimant was not encumbered by any indebtedness, he was nonetheless faced with the necessity of procuring means by which to earn a livelihood for himself and his family.

A situation of "extreme hardship" may exist when commutation is sought for the protection of the family from present or impending want or privation and also as a means by which to attain rehabilitation and return to gainful capacity. "Extreme hardship," within the meaning of the statutory prerequisite to commutation, does not necessarily signify the highest or uttermost limit of need, poverty or destitution. The term "extreme" admits of varying degrees of severity. See In re Nelson's Estate, 132 Cal. 182, 64 P. 294, 298.

We hold that there is competent evidence from which the trial tribunal could find "a good cause" in a situation of "extreme hardship."

The Fund next contends that the finding below is not responsive to the issue and is too indefinite for judicial interpretation since there is no mention in it of "good cause" or "extreme hardship." While the determination, as made, recites that commutation is in claimant's "best interest", the meaning and intent of the order is clear and there is competent evidence to support it. In this state of the record, we will not accord the language a narrow or technical construction. Mere failure of the trial tribunal to follow the precise statutory language does not, standing alone, indicate a fatal defect in its finding. Dunaway v.

Southwest Radio & Equipment Company, Okl., 331 P.2d 365, 367; Beatty v. Scott, Okl., 362 P.2d 699, 700; Dierks Forests, Inc. v. Parnell, Okl., 331 P.2d 392, 396.

█ Lastly, it is urged that liberal commutations will invariably result in the depletion of the trust fund. This, of course, is a matter which pertains to advisability of the statutory enactment. We may not concern ourselves with the merits or wisdom of legislation. See Special Indemnity Fund v. Dailey, Okl., 272 P.2d 395.

Proceeding is free from errors of law and the order rests on competent evidence.

Order sustained.