**SPECIAL INDEMNITY FUND of the State of Oklahoma, Administered by the State Insurance Fund, Petitioner,**

v.

**Jerry Wayne LITTERELL and the State Industrial Court of the State of Oklahoma, Respondents.**

No. 40061.

Supreme Court of Oklahoma.

April 16, 1963.

Original proceeding by Special Indemnity Fund to review an order of the State Industrial Court allowing partial commutation of an award made in favor of Jerry Wayne Litterell. Order vacated.

Mont R. Powell, Moraul Bosonetto, Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., James R. Fuson, Asst. Atty. Gen., for defendant State Industrial Court.

BLACKBIRD, Chief Justice.

In this proceeding, the State's Special Indemnity Fund, hereinafter referred to as "petitioner", or "the Fund", seeks vacation of an order of the State Industrial Court granting the claimant and respondent, Jerry Wayne Litterell, a partial commutation of an award payable by the Fund, which Tit. 85 O.S.Supp.1959, and O.S.1961 § 172, authorizes as to such awards of more than $7500.00 " * * * in cases of extreme hardship * * *".

The primary issue here is whether or not the present case is one of "extreme hardship" within the meaning of that term as used in the quoted statute. Pertinent events preceding entry of the challenged order were substantially as hereinafter related.

Claimant received an injury to his right eye on June 12, 1959, and was paid by his employer's insurance carrier, for his temporary total disability therefrom, compensation in the sum of $840.00, at the rate of $35.00 per week, ending November 25, 1959. Thereafter, by an order entered June 14, 1960, in which those facts, among others, were found, the Industrial Court further determined that, as a result of said injury, the claimant sustained total industrial blindness in that eye, and awarded him compensation in the amount of $3000.00 for permanent and total disability, payable at the rate of $30.00 per week. Said court also found that under its prescribed schedule of payments, the sum of $870.00 would have accrued to June 15, 1960, and it ordered that amount paid to claimant in a lump sum. Included in said order was the requirement that $60.00 be deducted from that sum, and, with a like amount to be paid by the employer or its insurance carrier, transmitted to the Fund.

By another order entered later the same day, the Industrial Court determined that, by reason of a childhood injury to his left eye, claimant " * * * was a previously

disabled person, as defined by law * * *", and that the total loss of his right eye resulting from the injury of June 12, 1959, combined with the loss of his left eye, rendered him permanently and totally disabled. On the basis of said determination, claimant was awarded the total amount of total and permanent disability compensation, to which he was entitled for such disability, calculated on the basis of weekly payments extending over a 500-week period, diminished by the 100 weeks of such compensation he had previously (on the same day) been awarded for his right eye injury, and the $840.00 of "temporary-total" compensation he had received as aforesaid, leaving a total balance of $11,160.00. This latter amount, reduced by $223.20, was ordered to be paid claimant by the Fund at the rate of $30.00 per week.

Thereafter, the Industrial Court conducted a hearing on an oral application by the claimant to commute, to a lump sum, a portion of the above-mentioned unpaid balance of his award; and, on the basis of testimony concerning the claimant's need, and his proposal to purchase a small cafe at Lindsay, Oklahoma, said court, on October 5, 1960, without objection from the Fund, entered its order commuting to a lump sum $1500.00 from the "latter end" of the award, and directing the Fund to transmit that amount to claimant in one payment.

After receiving this payment, the claimant was married to a blind woman, and before he, on January 31, 1962, filed in the Industrial Court his "REQUEST FOR FURTHER COMMUTATION"—the only matter which the present proceeding directly concerns—a child was born to the couple. Unlike claimant's aforementioned first application for commutation, this one was opposed by the Fund; but, after the claimant's testimony in support of it was heard by one of the Court's trial judges, said tribunal entered an order on February 13, 1962, finding that " * * * it would be to the best interest of claimant * * * to commute $1290.00 of the unpaid balance * * *" of the previous award of June

14, 1960, and directing the Fund to pay that amount to claimant in a lump sum. After this order was affirmed by the Industrial Court sitting en banc, the Fund instituted this original proceeding to vacate it.

The first argument, upon which the Fund bases its claim of error in the challenged commutation order, is, in substance, that there is no competent evidence reasonably tending to show this to be a case of "extreme hardship", and that therefore said order was not authorized under section 172, supra, citing Special Indemnity Fund v. Hull, Okl., 369 P.2d 162. In that case, claimant's monthly income was greater than the total of his monthly expenses reflected by the evidence, and this court vacated the trial court's commutation order, after the following pronouncement (among others):

"The restrictive provisions contained in 85 O.S.Supp.1959 § 172 are manifestly designed to confine lump-sum awards against the Fund to those instances where relief is *essential to protect claimant's family from want and privation or to facilitate production of income. The statutory power may not be used with the view of improving claimant's existing standard of living.* When commutation is sought for the sole purpose of satisfying outstanding obligations, the facts must disclose a present and immediate need for a lump-sum award in order to maintain claimant's family at a level consistent with the minimum requirements of a decent and wholesome livelihood.

"The undisputed evidence in the cause under review does not disclose the presence of any statutory prerequisite to an order of commutation. * * *." (Emphasis ours).

In the present case, claimant did not seek the commutation order for the purpose of satisfying outstanding obligations. At the hearing it was revealed that he never purchased the cafe for which he ostensibly obtained the first commutation order, and the $1500.00 he received under it was apparently used to keep him abreast of his

current expenses when they exceeded his earnings, for, according to his testimony at the hearing on the last commutation application, he then had no outstanding indebtedness, and his income, at that time, of $30.00 per week from the Fund, plus an expected additional $50.00 per week in earnings as an employee of "Vocational Rehabilitation, Stand Program", at a snack bar in Oklahoma City's Federal Building, would be ample to defray the expenses of the standard of living he and his family were maintaining at the time of said hearing. He apparently was not satisfied with the family's living conditions in the furnished 1-bedroom house in which they had been living for some time prior to the hearing, however, and the only reasons, to which claimant testified, for wanting the balance of the 25% commutation authorized by section 172, supra, (which, in this instance, would be approximately $1200.00) was to enable the family to purchase furniture for a 2-bedroom unfurnished house in Oklahoma City's Capitol Hill section, and to defray the expected less-than-80-dollar cost of removing two of his wife's ingrown toe nails.

On behalf of the claimant, our attention is invited to an excerpt from his testimony that his wife and baby had had colds all winter in the house in which they were living, and that, in it, they " * * * didn't have room for anything". There is also cited the following excerpt from this court's opinion in Special Indemnity Fund v. Thompson, Okl., 367 P.2d 1013, 1016:

"A situation of 'extreme hardship' may exist when commutation is sought for the protection of the family from present or impending want or privation and also as a means by which to attain rehabilitation and return to gainful capacity. 'Extreme hardship,' within the meaning of the statutory prerequisite to commutation, does not necessarily signify the highest or uttermost

limit of need, poverty or destitution. The term 'extreme' admits of varying degrees of severity."

We fail to see how the above quotation supports, in any way, the order challenged in this case. Here there is nothing to show that the desired commutation was contemplated to protect claimant's family from "present or impending want or privation * * *". Nor was there any relationship indicated at the trial, between such an allowance, and any contemplated rehabilitation of the claimant, or any production of income for him. On the other hand, the evidence shows that the family's lodging expenses will be greater in the larger house than they are in the present one. As far as the evidence discloses, claimant and his family are neither now "in want" or being deprived of any of the necessities of life. Nor was it shown that there is not sufficient margin between claimant's present, and immediately anticipated, income and his family's necessary living expenses, to allow his convenient payment, in the immediate future, of the expected cost of his wife's toe operation. As we see the evidence, claimant applied for the commutation primarily—if not solely—with the view of raising his family's standard of living. As the facts were undisputed, and the only issue for determination was the legal one of whether or not such facts brought the case within the category described in section 172, supra, as "cases of extreme hardship", we must hold, as we did in Special Indemnity Fund v. Hull, supra, that, " * * * as a matter of law * * *", the order challenged herein was unauthorized under said statute.

Accordingly, said order is hereby vacated.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.