[No. 18367.   Department One.—March 11, 1895.]

IN THE MATTER OF THE ESTATE OF JOSEPH A. WAX, DECEASED.

ESTATES OF DECEASED PERSONS — CONTEST OF WILL — INSANITY — EVI-
DENCE—DISPOSITION OF DEED.—Upon a contest of the probate of a will
upon the ground that the testator was not of sound and disposing mind
when the will was executed, where a brother of the testator had testi-
fied that his manner was peculiar and strange, that their mother made
a deed to them jointly, prior to the making of a deed by her to decedent,
and that decedent told the witness what became of the deed, a question
asked the witness as to what he said became of that deed was properly
overruled as irrelevant and immaterial, in the absence of any showing
when the deeds were made, or what land or property, if any, was trans-
ferred thereby, no offer being made to prove that the deed was treated
or disposed of otherwise than deeds usually are by the holders thereof.

ID. — DRAWING OF WILL — COMMUNICATIONS BETWEEN ATTORNEY AND
CLIENT—WAIVER OF OBJECTION—MOTION TO STRIKE OUT EVIDENCE.
Where the evidence of an attorney who drew the will was offered in
support of its validity, and objected to by the attorney of the contest-
ants, upon the ground that the evidence offered called for confidential
communications between client and attorney, and the objection was
withdrawn, such withdrawal deprived the contestants of the right after-
ward to move to have the testimony stricken out, upon the ground
that the statements made by the witness consisted of confidential com-
munications made between client and attorney.

ID. — TESTIMONY OF ATTORNEYS AS ATTESTING WITNESSES — WAIVER OF
SECRECY.—When a testator requests his attorneys to sign a will as at-
testing witnesses, he in effect consents that whenever the will is offered
for probate they may be called as witnesses and testify to any facts,
within their knowledge, necessary to establish its validity, and waives
the requirement of secrecy.

ID. — RATIONAL CONDUCT OF BUSINESS TRANSACTION — OPINION OF WIT-
NESS.—Where a witness has testified to a business transaction with the
testator, a question as to how he conducted the transaction is relevant
and material, and does not call for an opinion of the witness, but for
a statement as to the conduct and appearance of the testator at the
time of the transaction.

ID.—OPINION AS TO SANITY—INTIMACY OF ACQUAINTANCE—DISCRETION OF
COURT.—Where a witness who testifies to an acquaintance with the
testator was asked for his opinion as to his sanity, the determination
of the question as to whether the acquaintance was of an intimate char-
acter sufficient to justify the opinion of the witness under section 1870
of the Code of Civil Procedure is within the discretion of the court,
and a ruling permitting the opinion to be given will not be reviewed,
unless a clear abuse of discretion is apparent.

APPEAL from a judgment of the Superior Court of El
Dorado County and from an order denying a new trial.

The facts are stated in the opinion.

*Johnson & Johnson,* and *Charles A. Swisler,* for Appellants.

The court erred in overruling contestant's objection to the question asked of the decedent's attorney requesting him to state what took place when the will was drawn. (*Estate of Flint,* 100 Cal. 391.) The question asked the witness Simon as to his opinion of the decedent's soundness of mind was improper, as the witness was not an " intimate acquaintance" within the meaning of the law. (*Estate of Carpenter,* 94 Cal. 406. See *Wheelock* v. *Godfrey,* 100 Cal. 578; *Holland* v. *Zollner,* 102 Cal. 633; *Robinson* v. *Exempt Fire Co.,* 103 Cal. 1; 42 Am. St. Rep. 93.)

*Irwin & Irwin,* and *E. W. Witmer,* for Respondent.

The motion to strike out the testimony of the attorney of the decedent as to his communications with his client in regard to the will was properly denied, as contestant's objection to such testimony was withdrawn. (*People* v. *Long,* 43 Cal. 444; *People* v. *Rolfe,* 61 Cal. 540.) The communications, even if conceded to be confidential, were shorn of this character by the decedent himself, when he made the attorneys who drew the will the subscribing witnesses thereto, for by that act he waived the privilege, and thereby placed the witnesses in a position where they might testify to any matter in relation to the will and its execution, as well as to the mental condition of the testator. (*McMaster* v. *Scriven,* 85 Wis. 162; 39 Am. St. Rep. 828; *In re Coleman,* 111 N. Y. 220; *In re Lamb's Will,* 18 N. Y. Supp. 173; *Doherty,* v. *O'Callaghan,* 157 Mass. 90; 34 Am. St. Rep. 258.) The admission of the testimony of the witness Simon, in answer to the question as to how the decedent conducted business, that the decedent acted like any rational man would, was proper, as the opinion of nonexpert witnesses may be received to prove the mental condition of a party whose insanity is in dispute. (*Hardy* v. *Mer-*

*rill*, 56 N. H. 227; 22 Am. Rep. 441; Schouler on Wills, sec. 201.) The witness Simon was an "intimate acquaintance" of decedent, and as such was competent to give his opinion of the decedent's sanity. The question as to whether the witness was such an "intimate acquaintance" was one largely within the discretion of the trial court which should not be interfered with except for abuse. (*Estate of Carpenter*, 94 Cal. 406; *Wheelock* v. *Godfrey*, 100 Cal. 578; *People* v. *Pico*, 62 Cal. 50; *People* v. *Lane*, 101 Cal. 513; *People* v. *Levy*, 71 Cal. 618; *People* v. *Fine*, 77 Cal. 148; Schouler on Wills, sec. 203.)

BELCHER, C.—Joseph A. Wax was a resident of and died in El Dorado county on February 4, 1893. His only surviving heirs were three sisters and one brother. He left a paper purporting to be his last will and testament, which was thereafter duly presented for probate to the superior court of that county. Two of the sisters and the brother appeared and filed written opposition to the probate of the alleged will, upon the ground that when it was executed the decedent was not of sound and disposing mind. The issue thus raised was tried before a jury, and the verdict was against the contestants. Thereupon judgment was entered admitting the will to probate, and from that judgment and an order denying their motion for a new trial the contestants appeal.

The only points made for a reversal are that the court erred in certain rulings upon the admission of evidence.

1. William Wax, one of the contestants, was called as a witness for them, and testified that the decedent was his brother, and that his manner was peculiar and strange; that their mother made a deed to them jointly, prior to the making of the deed by her to decedent, and that decedent told him what became of the deed. He was then asked: "What did he say became of that deed?"

The question was objected to as irrelevant and immaterial, and the objection sustained. An exception was reserved, and it is now urged that the ruling was erroneous.

Counsel say: "Suppose the answer had been that deceased ate the deed in his soup, or cut it up as a salad, or burned it and used the ashes as snuff, or soaked it in vinegar and drank it as wine, or that he carried it around with him in his pocket as a charm, or kept it in his boot as a preventive to rheumatism, or that he had thrown it away or fed it to his cattle or his dogs—certainly such an answer would have tended to show that his mind was affected, and would have been proper evidence for the jury to consider in determining the issue presented to them."

It does not appear when either of the deeds referred to was made, nor what land or property, if any, was transferred or attempted to be transferred thereby. Both deeds may have been made many years before the execution of the will in contest. Contestants made no offer to prove that the deed to decedent was treated or disposed of by him, otherwise than as deeds usually are by the holders thereof. The suggestions of counsel, therefore, as to possible answers to the question objected to, are without weight, and deserve no consideration. Under the circumstances shown the question was entirely irrelevant and immaterial, and the objection to it was properly sustained.

2. Charles F. Irwin and Fred Irwin were attorneys at law, practicing their profession as partners under the firm name of Irwin & Irwin, at Placerville, in El Dorado county. The proposed will was drawn in their office by Fred Irwin on January 18, 1893. After it was drawn the testator subscribed his name thereto and declared to the two Irwins that the instrument was his will, and they, at his request, and in his presence, and in the presence of each other, signed it as attesting witnesses.

Fred Irwin was called as a witness for the proponents, and, after testifying to the preliminary facts, was asked: "Now, Mr. Irwin, you will please proceed and relate in narrative form all that occurred between you and Joseph Anton Wax on the eighteenth day of January, 1893 ? "

Counsel for contestants objected to the question upon the ground that it called for confidential communications between client and attorney, and the witness had no right to reveal them, and thereupon proceeded to question the witness further. At the conclusion of the questions the objection was renewed, when one of the attorneys for proponents stated that he wished to argue the question, and thereupon the attorney for contestants stated that rather than lose the time he would withdraw his objection. The witness then went on to testify at length on direct and cross-examination, and at the conclusion of his evidence contestants moved to strike it out upon the ground that the witness was acting as attorney for Wax at the time, and the statements he made were within the provisions of subdivision 2 of section1881 of the Code of Civil Procedure. The motion was denied and an exception reserved.

Charles F. Irwin was also a witness for proponents, and was asked, among other things, to state every thing that occurred between him and the testator on the day the will was executed. The testimony was objected to as being a violation of a confidential communication made between client and counsel, and the objection was overruled and exception taken.

It is urged that these rulings were erroneous and prejudicial to contestants.

As to the refusal to strike out the testimony of Fred Irwin, it is enough to say that when contestants withdrew their objection to the question propounded to him they effectually deprived themselves of the right to afterward move to have his testimony stricken out. (*People* v. *Long*, 43 Cal. 444; *People* v. *Rolfe*, 61 Cal. 540; *People* v. *Samario*, 84 Cal. 484).

As to the other objections raised under this head, it must be held that when the testator requested the Irwins to sign the will as attesting witnesses, he in effect consented that whenever the will should be offered for probate they might be called as witnesses

and testify to any facts, within their knowledge, necessary to establish its validity.

In New York, where the statute in regard to the right to examine an attorney as to communications made to him by his client is substantially the same as ours, the court of appeals held in the *Matter of Coleman*, 111 N. Y. 220, that where the attorney is requested by the testator to sign the attesting clause of the will as witness thereto, this is an express waiver, within the meaning of the code, of the pledge of secrecy imposed thereby, and authorizes the disclosure. The court said: "The act of the testator in requesting his attorneys to become witnesses to his will leaves no doubt as to his intention thereby to exempt them from the operation of the statute, and leave them free to perform the duties of the office assigned them, unrestrained by any objection which he had power to remove."

In Wisconsin the statute provides that "an attorney or counselor shall not be allowed to disclose a communication made by his client to him, or his advice given thereon, in the course of his professional employment." In *McMaster* v. *Scriven*, 85 Wis. 162; 39 Am. St. Rep. 828, the contest was in regard to the probate of the will of one Susan R. Pitt, deceased. The paper propounded as such last will was drawn by J. G. Wickhem, an attorney, and signed by him as one of the attesting witnesses. The court said: "The testatrix requested Mr. Wickhem to sign the will, which was the result of the communications between them, as a subscribing witness, and he signed it accordingly. This must be held to be a waiver of objection to his competency, so as to leave the witness free to perform the duties of the position, and to testify to any matter in relation to the will and its execution, of which he acquired knowledge by virtue of his professional relation, including the mental condition of the testatrix at the time."

In *Doherty* v. *O'Callaghan*, 157 Mass. 90; 34 Am. St. Rep. 258, the appeal was from a decree admitting

to probate the will of one Patrick Grealy. Thomas J. Gargan, an attorney at law, was permitted to testify, against the objection and exception of appellants, in regard to what was said to him by Grealy, when the latter came to see him for the purpose of having his will drawn. The appellants contended that the communications were privileged, and, therefore, inadmissible. The court, after reviewing authorities, said: " Undoubtedly, while the testator lives the attorney drawing his will would not be allowed, without the consent of the testator, to testify to communications made to him concerning it, or to the contents of the will itself; but after his death, and when the will is presented for probate, we see no reason why, as a matter of public policy, the attorney should not be allowed to testify as to directions given to him by the testator, so that it may appear whether the instrument presented for probate is or is not the will of the alleged testator."

And see, also, subdivision 10 of section 1870 of our Code of Civil Procedure, which provides: " The opinion of a subscribing witness to a writing, the validity of which is in dispute, respecting the mental sanity of the signer," may be given in evidence.

3. David S. Simon was called as a witness for proponents, and testified that he had resided in Placerville about thirty-five years, and was engaged in the business of selling dry goods, clothing, boots, and shoes, under the firm name of Simon & Son, and was so engaged in November, 1890; that he knew Joseph Wax " some, had a slight acquaintance with him"; that, some time in November, Wax came to him and wanted to know if he could borrow twelve hundred dollars, and said he wanted it for one year; that witness inquired about the property offered as security, and found the loan would be safe, and then told him he could have the money; that witness had a mortgage made out which was executed, and then let him have the money; that witness closely observed Wax when the loan was being negotiated,

and at the end of the year the money with the interest thereon was repaid by him in full.

The witness was then asked: "How did he conduct the transaction of borrowing the money, paying the interest, etc.?"

The contestants objected to the question upon the ground that it was irrelevant and immaterial; that it called for the opinion of the witness and not a statement of facts, and that the proper foundation had not been laid.

The objection was overruled and an exception reserved, and thereupon the witness answered: "He acted like any rational man would—like anybody else would."

There was no error in this ruling. The question did not call for an opinion of the witness, but for a statement as to the conduct and appearance of Wax at the time he made the loan and paid it. The question was relevant and material, and was proper under the law as declared in *People* v. *Lavelle*, 71 Cal. 351, and in *Holland* v. *Zollner*, 102 Cal. 633.

The witness was further asked: "From your acquaintance with the man, from his manner of transacting business with you, what is your opinion of the soundness or unsoundness of his mind at these times?"

The contestants objected to the question upon the ground that it was irrelevant, incompetent, and immaterial; and that no foundation had been laid for it, in that it was not shown that the witness was intimately acquainted with the man.

The objection was overruled and an exception reserved, and thereupon the witness answered: "As stated before, he acted like any rational man would. The time we done business with him, as far as my opinion goes, his mind was perfectly sound."

Contestants moved to strike out the answer on the ground that it came in under objection, and was irrelevant, incompetent, and immaterial, as the witness had no intimate acquaintance with the man.

The motion was denied and an exception taken.

It is earnestly urged that these rulings were erroneous, under subdivision 10 of section 1870 of the Code of Civil Procedure, which provides that "the opinion of an intimate acquaintance respecting the mental sanity of a person, the reason for the opinion being given," may be given in evidence.

It is difficult to define definitely what constitutes "an intimate acquaintance" within the meaning of the statute, and hence it has been held by this court that the matter is left largely to the discretion of the trial court. (*People* v. *Pico*, 62 Cal. 50; *Estate of Carpenter*, 94 Cal. 406; *Wheelock* v. *Godfrey*, 100 Cal. 578.)

In the case first cited it is said: "The witnesses having shown themselves respectively to have been acquainted with the defendant, the determination of the question as to whether that acquaintance was of an intimate character was within the discretion of the court below, with the exercise of which, there being no abuse, this court will not interfere."

And in the case last cited it is said: "From necessity much must be left to the discretion of the trial court in determining whether or not a given witness is an 'intimate acquaintance' within the purview of the statute."

Here, looking at all the evidence given by the witness, we cannot say that there was such a clear abuse of discretion by the court below, in overruling the objection to the question propounded and in refusing to strike out the answer thereto, as would justify a reversal of the order denying a new trial.

The above are all the points made for a reversal, and, as no material error is disclosed by the record, the judgment and order appealed from should be affirmed.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., VAN FLEET, J., GAROUTTE, J.