[S. F. No. 3.   Department Two.—December 3, 1895.]

IN THE MATTER OF THE ESTATE OF HENRY E. MUL-
LIN, DECEASED.

PROBATE OF WILL—CONTEST—MENTAL CAPACITY OF TESTATOR—EVIDENCE
OF ATTORNEY.—In a contest over the probate of a will where the ques-
tion of the capacity of the testator in making the will is in issue, evi-
dence of occurrences between the testator and the attorney who drew
the will, and became a subscribing witness thereto, and the declarations
and instructions of the testator are admissible and competent evidence
upon the question of the testator's mental capacity at the time of the
testamentary act.

ID.—PRIVILEGED COMMUNICATIONS—WAIVER OF PRIVILEGE—CONSTRUCTION
OF CODE—ATTORNEY AS WITNESS.—Section 1881 of the Code of Civil
Procedure is designed to protect the interest of the client, whose privi-
lege it is either to seal the lips of the attorney, or permit him to make
disclosures of confidential communications, and where a testator has re-
quested his attorney to become an attesting witness to his will, he
thereby expressly waives the privilege.

ID.—PHYSICIAN AS WITNESS—WAIVER OF PRIVILEGE.—Where an attending
physician and surgeon who attended the deceased during his last sick-
ness was made a subscribing witness to the will, the testator thereby
waived the privilege of confidential communications to the physician
accorded by subdivision 4 of section 1881 of the Code of Civil Proce-
dure, and the witness is thereby rendered competent to testify as to the
mental sanity and physical condition of the testator.

ID.—CROSS-EXAMINATION OF PHYSICIAN.—A physician testifying to the
mental sanity of the testator at the time of the testamentary act may be
cross-examined not only as to his qualifications, but also as to his knowl-
edge of the character of the patient's afflictions, and as to all the facts or
circumstances within his knowledge and acquaintanceship with the pa-
tient, upon which his judgment was exercised and his conclusion reached.

ID.—LEGAL EXECUTION OF WILL—FINDING AGAINST EVIDENCE.—Where
the evidence without conflict shows a legal execution of the instrument
probated as a will, provided the deceased had sufficient mental capacity
and understanding to execute the will, a finding to the contrary cannot
be sustained where it appears without conflict that he had sufficient
mental capacity and understanding to make the will.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order
denying a new trial.   J. V. COFFEY, Judge.

The facts are stated in the opinion of the court.

*George A. Proctor*, and *D. I. Mahoney*, for Appellant.

Dr. Lagan, as a licensed physician, was incompetent
to testify to anything that he had learned while attending

the deceased. (*Estate of Flint*, 100 Cal. 395; *Freel* v. *Market Street Ry. Co.*, 97 Cal. 40; *Gartside* v. *Connecticut Mut. Life Ins. Co.*, 76 Mo. 446; 43 Am. Rep. 765; *Briggs* v. *Briggs*, 20 Mich. 34; *Edington* v. *Mutual Life Ins. Co.*, 67 N. Y. 185; *Corbett* v. *St. Louis etc. Ry. Co.*, 26 Mo. App. 621; *Squires* v. *Chillicothe*, 89 Mo. 226; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256; 25 Am. Rep. 182.) The patient being dead, no one had power to waive the privilege. (*Estate of Flint, supra; Freel* v. *Market Street Ry. Co., supra; Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56; 52 Am. Rep. 1; *Loder* v. *Whelpley*, 111 N. Y. 239; *Renihan* v. *Dennin*, 103 N. Y. 573; 57 Am. Rep. 770; *Matter of Coleman*, 111 N. Y. 220; *Morris* v. *Morris*, 119 Ind. 341; *Fraser* v. *Jennison*, 42 Mich. 206.) The fact that the attorney was a subscribing witness did not authorize him to testify as a draughtsman to instructions received. (*Matter of Chase*, 41 Hun, 203.)

*Dunne & McPike*, for Respondents.

There was a conflict of evidence, and this court cannot disturb the finding. (*Blythe* v. *Ayres*, 102 Cal. 260; *Estate of Carriger*, 104 Cal. 83.)

Henshaw, J.—Mary T. Mullin, widow of deceased, offered his will for probate. A contest over its administration was raised by the brothers and sister of the deceased. The jury, upon special issues presented for their consideration, found that the deceased, at the time of the making of the purported will, was not of sound and disposing mind; that the deceased did not subscribe his name to the will, nor did any person so subscribe his name in his presence and by his direction; that no such subscription was made in the presence of the attesting witnesses, or was acknowledged by deceased to them to have been made by him or by his authority.

In accordance with these findings and others afterward to be considered, the court entered its judgment and decree denying the instrument probate, and from

this decree and from the order denying a new trial the proponent appeals.

1. George A. Proctor, called as a witness for proponent, was a subscribing witness to the will, and was also the attorney at law of the deceased in preparing and drawing the will. Proctor was summoned to prepare the will. He visited the deceased, who was then in his last sickness, received his instructions, retired to an adjoining room, reduced them to writing, and returned to the sick chamber, where the will was executed, he becoming a subscribing witness.

Objection was made by contestants to questions put to him upon direct examination touching the declarations made to him by deceased, and the instructions given him, and the occurrences at the interview immediately preceding the drafting of the instrument, upon the ground that the evidence was incompetent under section 1881, subdivision 2, of the Code of Civil Procedure.

The court sustained the objection. In this it erred. Evidence of the occurrences between the attorney and testator and the latter's instructions would have offered a valuable aid to the jury in determining the question of the testator's mental capacity at the time of the testamentary act which followed immediately. The testimony was, therefore, clearly material, and the conversation was admissible if not in violation of section 1881 of the Code of Civil Procedure. That section is designed to protect the interest of the client. It is his privilege to seal the lips of his attorney or to permit him to make disclosures of confidential communications. When a testator has requested his attorney to become an attesting witness to his will, he thereby expressly waives the privilege. It is so held by the court of appeals of New York, under the provisions of section 835 of their Code of Civil Procedure, which, in substance, is identical with section 1881, subdivision 2, of our own. As is said in *Alberti* v. *New York etc. R. R. Co.*, 118 N. Y. 77: "But, although dead, he may leave behind him evidence which

indicates an express intention to waive the privilege; as, for instance, where he requests his attorney to sign the attestation clause of his will, he, by so doing, expressly waives the provisions of the statutes and makes him a competent witness to testify as to the circumstances attending its execution, including the mental condition of the testator at the time. (*In the Matter of Coleman*, 111 N. Y. 220.)"

It is true that the New York code, in section 836, now expressly authorizes an attorney who has become a subscribing witness to a will to testify to its preparation and execution, but this provision was inserted by amendment adopted in 1892, and merely followed the judicial declaration to that effect.

In the *Estate of Flint*, 100 Cal. 395, our code provisions and the policy of the law are fully considered, and *In re Wax*, 106 Cal. 343, adopts the interpretation above quoted.

2. Dr. John Lagan was called as a witness by proponent. He was a practicing physician and surgeon, attended the deceased professionally during his last sickness, and was a subscribing witness to the will. These facts were brought forth upon his direct examination. After detailing the circumstances attending the execution of the will, he was asked, still upon direct examination, his opinion of the "mental sanity" of the deceased at the time of such execution, and answered: "At the time he signed he appeared to me to be of sound mind. That is my opinion."

Upon cross-examination the court permitted counsel to interrogate the witness as to the character of his patient's affliction, which appeared to be serose apoplexy, resulting in hemiplegy, and to show that the brain is involved and affected by this disease; likewise, that the accompanying paralysis evinced itself upon the Thursday preceding the Monday upon which the will was executed and the testator died. In addition, the witness was interrogated as to the disclosures which the autopsy made of the physical condition of the deceased,

and finally he was subjected to a cross-examination, keen and comprehensive, touching his professional learning and qualifications, and as an expert.

Appellant contends that this cross-examination was error: 1. In violating the privilege accorded by section 1881, subdivision 4, of the Code of Civil Procedure; and, 2. In permitting a cross-examination touching the expert qualifications of a witness who had been called to testify, as would an ordinary layman, merely to the mental condition of the deceased at the time he was called in to attest the will.

But these objections are not to be upheld. In making his attending physician a subscribing witness to his will the deceased did exactly what he effected in the case of his attorney at law—waived the privilege and invited a full and proper examination of the matters and facts upon which their lips would otherwise have been sealed. The evidence was not objectionable as evoking privileged matter, and was pertinent and admissible if within the range of legitimate cross-examination. And that it was we entertain no doubt.

Upon direct examination the jury was informed that this witness was a physician and surgeon, with years of experience and practice; and that he was the physician who attended the testator during his last sickness. Then, for their enlightenment, he is asked his opinion of the mental condition of the testator at the time of the testamentary act, and answers that he was of sound mind.

The answer to the question of necessity involved the use of the intimate knowledge by the physician acquired in prescribing for and treating his patient. It would be absurd to say that it was to be limited to the outward seeming and appearance of the patient at that particular moment, or, in other words, that the witness would have been justified in answering (*exempli gratia*) that from external appearances, and judging as a layman, his opinion was that he was of sound mind, but that using his professional skill and knowledge, and inti-

mate acquaintanceship with the patient acquired as his physician, his opinion was that he was mentally incompetent.

Having answered that, in his opinion, the man was of disposing mind, there were open to the cross-examiner two fields of inquiry: 1. The soundness of the witness' judgment, or, in other words, his qualifications as an alienist; and 2. The character of the patient's infirmities, that is to say, the facts and circumstances upon which the judgment was exercised and the conclusion reached.

The cross-examination was confined within these bounds, and was strictly proper.

3. The jury, finding upon special issues, declared that Mullin neither subscribed nor authorized the subscription of his name to the will; that no such subscription was made in the presence of the attesting witnesses or acknowledged by deceased to have been made by him or by his authority; that the instrument was never declared by Mullin to the attesting witnesses to be his last will; that the attesting witnesses did not sign in the presence and at the request of Mullin; that the instrument was not witnessed as a will by two competent witnesses, each signing his name in the presence of Mullin and at his request; and, finally, that Mullin did not make his mark to said will in the presence of said subscribing witnesses.

These findings are absolutely without support, excepting such as they receive from the conclusion reached and expressed by the jury that at the time of the making of the will Mullin was not of sound and disposing mind. If into each of these special verdicts it is to be read by intendment that none of these things was done *because* Mullin was not of sound and disposing mind at the doing of them, then these findings may at least be understood if not approved. But, if they are to be accepted for their face value as declarations by the jury that the acts did not take place and the alleged facts had

CX. Cal.—17

no existence, then are they at absolute variance with the uncontradicted testimony.

Three persons were present at the time of the execution of the will. All were called as witnesses; all testified to substantially the same occurrences, and there was no conflicting or opposing evidence. The testimony of the witness Proctor, corroborated by that of the other two, is as follows:

"I walked around to the right of the bed and asked Mr. Mullin if he desired me to read the instrument that I held in my hand. He said yes. I read it in a loud tone of voice, and when I finished I asked him if that was the disposition he wanted made of his property. He said yes. I said, 'Do you want your wife to act as executrix without bonds?' He said yes. I then said, 'Please sign this instrument,' and he made a motion with his right hand to reach up this way [showing], and I reached and handed him the pen that was on the stand. He made the remark as I put the pen in his hand, 'I am afraid I cannot sign it.' Doctor Lagan supported his back, his hand trembled considerably, and I said, 'If you cannot sign your name, Mr. Mullin, it is not necessary under the law; you can make your cross, and I can sign it for you if you so direct me.' He says, 'Very well; do so.' He made his cross by my supporting his wrist and hand. He held the pen in his fingers, his hand was trembling very perceptibly, and I steadied his hand and he made his mark. I then stepped to the stand and wrote Henry E. Mullin as it appears there, and my name to the left of it as a witness to that mark, and I then stepped back to his bedside and said, 'Mr. Mullin, what is this instrument?' and he replied, 'That is my will.' I asked him, 'Do you request Doctor Lagan, Mr. Duggan, and myself to witness it?' He answered yes. We each of us signed our name at the bottom of the instrument as they appear on the instrument."

This evidence does not require analysis. It shows a

legal execution of the instrument, provided the deceased had sufficient mental capacity and understanding, and it is not contradicted.  (*In re Guilfoyle*, 96 Cal. 598.)

The judgment and order appealed from are reversed and the cause remanded for a new trial upon the contest.

Temple, J., and McFarland, J., concurred.