Johnson, J.
The ground upon which the court of appeals based its reversal of the judgment of the trial court, was that the portion of the testimony of the family physician, which is quoted in the entry of reversal, was admitted in violation of the rule declared in Runyan v. Price, 15 Ohio St., 1. In that case this court approved the refusal of the trial court to admit a question which the contestant put to an acquaintance of the testator, viz: “State what your opinon was, on the evening Bowen called upon you to witness the will, as to the sanity or insanity of William Runyan, or his capacity to make a will.” The court say: “This branch of the inquiry involved a question of law and fact, and, to the extent that capacity was involved in the issue, the very question to be determined by the jury. It, furthermore, assumed that the witness knew the degree of capacity which the law required for the performance of the act of executing a will.” The question rejected in that case called for the opinion of the witness on the ultimate question in issue between the parties. It assumed that the witness was capable of de- ' termining for himself what capacity was required for the execution of a valid will and that he was competent to give an opinion on that subject. The decided case referred to, as well as the uniform trend of authority elsewhere, has well established the rule that such a question is inadmissible.
The testimony to which objection is made in this case, however, has not the infirmities which rendered the question referred to in Runyan v. Price incompetent. The questions do not call for *135 the opinion of Dr. Kimmell, as to the testator’s capacity to make a will or for the opinion of the witness as to what mental capacity is required by the law to enable one to make a valid will. The witness in answering the questions did not give any opinion touching the capacity of Mr. Byal to make a will, or as to what capacity was required for that purpose. Though some of his answers were rambling and not responsive.
Preceding the questions and answers refeired to, the physician had testified to his complete knowledge of, and acquaintance with, the physical and mental condition of Mr. Byal covering a period of about fifteen years prior to his death. This knowledge had been obtained by the study of those conditions while in the performance of his duties as the physician of testator during that period and through the close association and complete opportunity which follow that relationship. In that testimony the doctor had fully described the gradual, well-defined and constant decline in the mental and physical powers of the testator after the year 1900, due to the influences of extreme old age, fhe effects upon his nervous system of different attacks of sickness and of painful and exhausting operations on his eyes. The distinctions here pointed out between this case and Runyan v. Price are in harmony with the suggestions contained in the recent case of Dunlap, Exr., v. Dunlap et al., 89 Ohio St., 28, both of which cases we approve and follow.
It is not doubted that the opinions of physicians touching questions of mental strength or weak *136 ness are competent to be given in evidence in cases where those matters are in issue. The weight • to be given the evidence in a particular case is to be determined by the jury, as the testimony of witnesses touching any other matter should be determined. Where the physician has had the opportunity to observe mental conditions, by reason of having acted through a sufficient period of time as medical attendant, it is proper for him to express an opinion upon the actual condition of a patient’s mind at the times, or .during the period, in which he was so engaged. And where the grounds have been properly laid for a hypothetical question, a physician, who has properly qualified as an expert, may give his opinion as to the mental condition of the person referred to- in the question under the circumstances stated therein. These principles are well recognized. • Page on Wills, Section 389; Jones on Evidence (2 ed.), Section 373; In re Mullin’s Estate, 110 Cal., 252; In re Fenton’s Will, 97 Ia., 192; Davis v. United States, 165 U. S., 373; Hall v. Perry, 87 Me., 569; Kembsey v. McGinniss, 21 Mich., 123.
The last three of the questions which the court of appeals found to be improper, are the only ones which go directly to the mental capacity of the testator at the times he made the will and codicils. The preceding questions called for the opinion of the doctor as to the condition of persons generally who are of about the age and have been subjected to the conditions which he had already described as. to Mr. Byal. These opinions did not relate to *137 the capacity of any man under such circumstances to transact any particular business, but were simply to the effect that a person under, such mental and physical conditions and suffering from the afflictions described was less able to properly comprehend and participate in the general business affairs of life. So far as these questions are concerned it is clear that a properly qualified physician would be able to more accurately analyze and define the mental condition of such a person than one not so qualified.
The last three questions differed from those that preceded them in that they inquired for the opinion of the doctor as to the capacity of the testator based upon the knowledge which the doctor himself had of his mental and physical condition, all of which he had fully detailed in the preceding parts of his evidence. He was asked to take into consideration the diseased and enfeebled condition of the testator, both mentally and physically, as he had already described it, and to give an opinion as to whether he was capable of understanding and deciding large and complicated business propositions and the division and distribution of an estate valued at about $70,000. It called for his opinion as an expert, based on facts within his own knowledge and as to which he had testified, concerning thé capacity of the testator to comprehend the matters referred to. This was an evidential fact, proper to be given to the jury as evidence, to be considered by them along with all the other evidence in the case in the determination of the ultimate question at issue.
*138 A physician giving his opinion on the mental capacity of a testator, or other person, which is based on the actual knowledge which the physician has gained by personal contact with, and study of, such person as a patient occupies a different relation to the matter than a physician who has no such knowledge and who testifies in answer to hypothetical questions. A hypothetical question is wholly incompetent if it assumes elements which the testimony in the case does not tend to establish. Williams v. Brown, Exr., 28 Ohio St., 547.
An opinion based on such a question could be of no value for the purposes of the case. The only sound theory upon which the opinion of an expert is admitted at all is that he has the knowledge, training and experience with which to form a better opinion upon a certain state of facts than one not so well equipped. Necessarily, the opinion of a physician, which has been formed by the slow and sure processes of time and responsibility in connection with the performance of professional duty to a patient, is more valuable than that of one who has not such advantages and gives his opinion from a hypothetical question. The line between strength and weakness in the mind is so elusive that it may well be doubted whether a stranger can be brought by descriptions of the mental manifestations of a particular individual into a position to make his testimony concerning it of great value, except in well-defined cases. There is an increasing loss of confidence in that class of expert testimony. The doctor in this case had, by his testimony, shown himself qualified to testify *139 as to the facts necessary to be ascertained for a proper determination of the issue made up in the case. The weight to be given it was a matter for the jury, in the light of all the other evidence, including the fact that he had acted as a witness to thesecond ■ codicil.
The court of appeals also found that the trial court erred in the portion of the charge, set out in its entry of reversal, which we have quoted above in the statement of the case. We think the reviewing court misapprehended the purpose and import of this portion of the charge. The physician was one of the witnesses to the second codicil of the testator, and, in the proceeding to probate the will and codicils in the probate court, had made and signed an affidavit as required by law. This affidavit was put in evidence by the defendants, and the doctor-was cross-examined concerning it for the purpose-of weakening his testimony with reference to the mental capacity of the testator. He gave as his explanation that he did not know whether he read it or whether it was read to him before signing it. In the portion of the charge referred to, the court instructed the jury that they might take into com sideration any and all declarations, statements and testimony given by the physician in connection with this, or the former trial of the case, or on the admission of the will and codicils to probate in 'the probate court, and particularly all facts and circumstances testified to by him upon which he based his opinion as to the mental condition of the testator. As preliminary to this the court instructed them that the attending physician is pre *140 sumed to know the state of mind of his patient, that the question of the weight of his testimony, however, was for the jury to determine from all the facts and surrounding circumstances. Taken together these statements were proper precautions to be given to the jury. They impressed upon them that the testimony of the doctor was to be scrutinized the same as the testimony of every other witness, and that they could give such weight to it as they thought it was entitled to in the light of all of the circumstances.
The defendants in error insist also in their briefs and at the bar that the court of appeals should have rendered final judgment in their favor, sustaining the will, and that for error in not doing so this court should enter such judgment on their cross-petition in error. They urge that there was no evidence to sustain the verdict of the jury in setting aside the will. One of the grounds of the motion for a new trial in the trial court was that the verdict was against the manifest weight of the evidence, and another that it was not sustained by sufficient competent evidence. These grounds were alleged in the petition in error and considered by the court of appeals. That court expressly stated in its entry: “The court finds no prejudicial error justifying a reversal of the judgment herein other than the errors above stated, they being the sole grounds upon which the case is reversed.” It was the duty of the court of appeals, as well as of the trial court, to consider and weigh the evidence, and if it found *141 that there was no competent evidence sustaining the verdict, or that it was against the manifest weight of the evidence, to reverse the judgment. By its entry it has in effect declared that after the performance of this duty it not only finds com* petent evidence to support the verdict, but that they do not find that it is against the manifest weight of the evidence.
In the disposition of cases before this court it does not' weigh evidence, but it will examine the record to ascertain whether there is any evidence to support the contention of the prevailing party in the court below, and also whether the trial court should have directed a verdict on the undisputed evidence. We have examined the record in this case to determine whether there was evidence oñ behalf of the contestants, which, if not overcome by stronger proof to the contrary, would require that the will and codicils be set aside. This is purely a question of law. On this matter we agree with both of the lower courts.
It would be impracticable and wholly unnecessary to here review the great amount of testimony offered on the trial.
From the testimony of Dr. Kimmell, already referred to in this opinion, sufficient is shown, if uncontroverted, to establish such mental weakness in the testator at the time of the making of the will and codicils as to incapacitate him in that behalf. Our decision as to the admissibility of the testimony of Dr. Kimmell would of necessity compel the conclusion that there was evidence to sus *142 tain the verdict of the jury in this case, if not overcome by stronger proof to the contrary.
This testimony, and the testimony of other witnesses (interested, it is true, but still witnesses, whose testimony was entitled to be considered by the jury, under proper instructions from the court), tended to prove that from the year 1900 until his death Mr. Byal was seriously afflicted; that he had been compelled to submit to an operation on his eye in 1904, which very seriously affected his nervous system, and that thereafter his physical and mental powers gradually declined and grew weaker under the effects of a general breakdown until his death; that this condition had proceeded to such a state that, at the times of the making of this will and codicils, he had not sufficient mental capacity to comprehend the transaction; that from some cause he had in that period taken a dislike to several of his children and had become wrongfully impressed with the idea that their mental powers were affected. Testimony was offered tending to show that this was produced by designs of the wife of the son George. There was considerable feeling and contention between the children, and it is conceded by the defendants in error in their brief that this situation greatly distressed the father, and that the quarrel which the defendants in error believed was started by the plaintiff in error with the wife of the son, George, “caused the old gentleman, the father, many sleepless nights and somewhat braced him up against them in the further disposition of his estate.”
*143 The defendants in error produced much testimony in support of their view as to the full capacity of the testator and the other issues in the case. The jury decided the issues against them. What we have briefly stated with reference to the matter is simply to show that there was testimony, produced by the contestants, of a very substantial character in support of the claim they made against the validity of the will.
At the request of the defendants in error the court gave to the jury a number of special charges in which they were instructed with great detail as to the nature and degree of proof, both on the issue of capacity and undue influence, which the contestants were required to produce before the jury would be authorized to set aside the will and codicils, and that although the jury might find that the testator made an unequal distribution of his property by his will and cut off one or more with nothing, or but little, who seemed to have as strong a claim on his generosity as others who fared better, such facts are of themselves not evidence of undue influence and raise no presumption of the invalidity of the will. In the charge itself all of these requirements were very fully restated and every right of the defendants preserved.
A number of other assignments of error are made by the defendants in error which they urge in support of the judgment of reversal entered by the court of appeals. We have carefully gone over and considered them and find no prejudicial error manifest on the record.
*144 For the reasons above given the judgment of the court of appeals will be reversed and that o.f the court of common ■■ pleas affirmed.

Judgment of the court of appeals reversed and that of the common pleas affirmed.

Si-iauck, Donahue, Wanamaker and Wilkin, JJ., concur.
Nichols, C. J., and Newman, J., dissent.