[Civ. No. 21272. Second Dist., Div. Three. Dec. 2, 1955.]

JACOB (JAY) PALEY, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, as Executor, etc., Real Party in Interest.

452

Wright, Wright, Green & Wright, S. Earl Wright, Loeb & Loeb and Herman F. Selvin for Petitioner.

Harold W. Kennedy, County Counsel, and William E. Lamoreaux, Deputy County Counsel, for Respondent.

Fox, Goldman & Kagon, Stanley E. Fox, Brady, Nossaman & Walker, Walter L. Nossaman and Joseph L. Wyatt, Jr., for Real Party in Interest.

ASHBURN, J. pro tem.*—This case involves certain aspects of the problem of the extent of survival after death of a testator's privilege against disclosure by his attorney of confidential communications made by the testator in connection with the preparation and execution of his will. ▪ Petitioner Jacob Paley seeks a writ of mandate directing the superior court to require his deceased wife's attorney, Stanley E. Fox, Esq., to answer certain questions upon deposition which the trial court held objectionable as calling for privileged matter, for that reason sustaining objections to said questions. If petitioner's ultimate position is sound mandamus is an appropriate remedy. (*Brown* v. *Superior Court,* 34 Cal.2d 559 561 [212 P.2d 878] ; *Carnation Co.* v. *Superior Court,* 96 Cal. App.2d 138, 141 [214 P.2d 552] ; *Ahern* v. *Superior Court,* 112 Cal.App.2d 27, 30 [245 P.2d 568].)

It appears that petitioner and his wife, Lillian Paley, were married in 1906 and resided together in the State of Pennsylvania until 1936 when they moved to California, living in this state until the wife's death on January 2, 1954. She

*Assigned by Chairman of Judicial Council.

left a will dated December 5, 1952, which bears the signatures of Mr. Fox, his secretary and another employee of his firm as attesting witnesses. This will was admitted to probate and Bank of America National Trust and Savings Association was duly appointed and has qualified and is acting as executor thereof. The will makes various specific bequests and leaves the residue of the estate to certain specified beneficiaries, to the exclusion of petitioner. The instrument contains this language: " 'THIRD: It is my intention, hereby, to dispose of all property, real or personal, which I am entitled to dispose of by Will, whether said property be my separate property or the community property of my husband and myself.' "

On or about October 15, 1954, Mr. Paley brought an action against the executor in the superior court seeking declaratory relief. The complaint in paragraph V alleges the marriage and residences as above stated. Further that Mrs. Paley left a substantial amount of personalty which was at all times her separate property, standing in her own name; that it was acquired during marriage in Pennsylvania or with the proceeds of such acquisitions. Defendant's answer alleges that all real and personal property left by decedent was acquired during marriage by gift, bequest, devise or descent, or the rents, issues or profits thereof. Paragraph VI of the complaint alleges that Mr. Paley was at the time of his wife's death and now is the owner of considerable personal property which is his separate estate standing in his own name; that same was acquired partly before and partly after marriage while domiciled in Pennsylvania; that plaintiff has no personal property otherwise acquired. The answer avers that plaintiff acquired a substantial amount of personal property after marriage while domiciled outside the State of California, "which would not have been the separate property of plaintiff if acquired while domiciled in this state," the extent thereof being unknown to defendant.[1] The quoted language uncovers the major controversy between the parties. It points to section 201.5 Probate Code, which says: "Upon the death of either husband or wife one-half of all personal property, wherever situated, heretofore or hereafter acquired after marriage by either husband or wife, or both, while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this State,

---

[1]Counsel appropriately assume that Pennsylvania does not have any community property system. 41 C.J.S. § 462c, p. 987.

shall belong to the surviving spouse; the other one-half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the debts of the decedent and to administration and disposal under the provisions of Division III of this code.''[2] Paragraph VII of the complaint alleges an oral agreement between the spouses, made in California while resident here, to the effect that all property acquired by either of them or standing in his or her name was and should be separate property of the one acquiring the same or in whose name it might stand. This allegation is denied by defendant. The complaint then defines in paragraph IX the existing controversy and defendant by answer and cross-complaint gives a slightly different version of it. As appears from the pleadings and the briefs herein these are the questions in dispute. 1. Was there any community property of this marriage? 2. If so, was there an agreement transmuting it and any quasi-community property into separate property as alleged by plaintiff? 3. Was the personalty standing in Jacob Paley's name at time of Lillian's death quasi-community and, if so, did she have the right to make testamentary disposition of one-half of same under section 201.5, Probate Code? 4. Was the personal property standing in the wife's name at her death quasi-community, and, if so, does plaintiff succeed to one-half thereof under said section 201.5, notwithstanding her leaving same to others in her will?

In June 1955 plaintiff commenced the taking of the deposition of Mr. Fox under section 2021, subdivison 6, Code of Civil Procedure, upon the ground that he is the only witness who can establish certain facts material to the issue. Upon advice of counsel he relied upon an asserted privilege with respect to any conversations with Mrs. Paley concerning the preparation of her will and other professional matters. There have been two proceedings before the superior court seeking to compel answers. As a result of the first one the witness was ordered to answer certain questions and objection was sustained to one other. The deposition was resumed and Mr. Fox then testified that he acted for Mrs. Paley throughout the whole process of preparation and drafting of her will; that within a period of two years prior to execution of her will he had conversations with his client about the disposition of property by her will; that no third person was present at

[2]We will for convenience designate such holdings as quasi-community property.

any of those conversations; that during the same period he had many conversations with her about other matters of a confidential nature; that they had conversations about the nature, extent, description or identification of property which she claimed to own or over which she had or claimed the right of testamentary disposition. Mr. Fox refused to answer the question to which objection had been sustained, namely: "Q. Will you please state the dates involved, the places at which they were held, the persons present and the substance of what was said at any conversation or discussion you may ever have had with Mrs. Paley as to the nature, extent of testamentary disposition of her property?" The witness having been asked and having refused to answer certain additional questions, the matter was presented the second time to the court. That series of questions is typified by the following: "Q. Did Mrs. Paley ever say to you, or in your presence and hearing at any time, in substance or effect, that there was no community property of the marriage between herself and Mr. Paley?

"Q. Did Mrs. Paley at any time ever say to you, or in your presence or hearing, that all of the property which Mr. Paley had was his own separate property, in substance or effect?

"Q. Did Mrs. Paley ever say to you, or in your presence and hearing, in substance or effect, that she and Mr. Paley had years before had an understanding or agreement to the effect that his property would be his separate property and her property would be her separate property? . . . Q. Will you state, Mr. Fox, the substance of the conversations or discussions that you had with Mrs. Paley relating to the nature, extent, identification or disposition or proposed disposition of any property by her?" The objections to all questions were sustained upon the grounds (1) that the will is not ambiguous and hence oral evidence not admissible or material and (2) that petitioner is a stranger to the will and the subject matter of the conversations is privileged as to him. Petitioner herein challenges both of these conclusions; respondent and the real party in interest stoutly assert that they reflect sound law.

The will on its face is not ambiguous. It declares an intention to dispose of all property over which testatrix has testamentary control. "It is my intention, hereby, to dispose of all property, real or personal, which I am entitled to dispose of by Will"; the addition of the phrase "whether said

property be my separate property or the community property of my husband and myself'' merely operates by way of description; it does not on its face narrow the scope of the declared and all-inclusive intention. But it is necessary to apply every will to the subject matter upon which it is to operate. To that end extrinsic evidence is always necesssary. Volume 57, American Jurisprudence, section 1041, page 676: ''A moment's reflection will show that in giving effect to any will, even the simplest and clearest, some extrinsic evidence must be admitted to identify the persons and property referred to in the will and to enable the court to apply the words of the will to the matters to which it relates, and this necessity is expressly or impliedly recognized in many decisions.'' Wigmore on Evidence, section 2470, page 227 says: ''The truth had finally to be recognized that words *always* need interpretation; that the process of interpretation inherently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing the document. 'Words *must* be translated into things and facts.' Instead of the fallacious notion that 'there should be interpretation only when it is needed', the fact is that there must always be interpretation. Perhaps the range of search need not be extensive, and perhaps the application of the document will be apparent at the first view; but there must always be a traveling out of the document, a comparison of its words with people and things. The deed must be applied 'physically to the ground.' . . . Once freed from the primitive formalism which views the document as a self-contained and self-operative formula, we can fully appreciate the modern principle that the words of a document are never anything but indices to extrinsic things, and that therefore *all the circumstances must be considered which go to make clear the sense of the words,*—that is, their associations with things.'' See also annotation in 94 American Law Reports, at page 52.

██ The existence of each type of property—separate, community and quasi-community—is in issue; likewise the question of conversion into separate property by oral agreement. The will furnishes no clue to solution of the questions thus arising. Extrinsic evidence is indispensable to administration of the estate, for the court must ascertain what property is subject to its jurisdiction. The issue of what property was subject to decedent's power of testamentary disposition is

the heart of the case. It follows that any questions put to the witness bearing upon the status of any property claimed by decedent or her executor go to the basic issue. And, of course, those questions search for evidence upon a material issue. If perchance the eliciting of such evidence raises a latent ambiguity in the will it can be removed by parol evidence. This is well settled. (26 Cal.Jur. § 208, p. 892; 18 Cal.Jur.2d § 282, p. 774; *Estate of Wolf*, 128 Cal.App. 305, 310 [17 P.2d 1052]; *Estate of Donnellan*, 164 Cal. 14, 19 [127 P. 166]; *Estate of Greenwald*, 19 Cal.App.2d 291, 296 [65 P.2d 70].) But the existence of an ambiguity, latent or patent, is not important at bar, because of the necessity of determining the identity and quality of estate property (authorities *supra*) as a basis for going ahead with administration on the probate side of the court. The evidence sought by the questions under consideration is material.

. ▮ The subject of privilege presents a more difficult problem. The rule is well established in this state, as elsewhere, that the privilege does not survive the testator's death when the matter of his conversations or instructions arises in will contests, petitions to determine heirship, petitions to construe an ambiguous will, or any other type of controversy involving only the heirs or next of kin and the legatees or devisees of the testator. Generally to this effect are *Estate of Dominici*, 151 Cal. 181 [90 P. 448]; *In re Wax*, 106 Cal. 343, 348 [39 P. 624]; *Estate of Nelson*, 132 Cal. 182, 188 [64 P. 294]; *In re Mullin*, 110 Cal. 252 [42 P. 645]; 58 Am.Jur. § 505, p. 283; 70 C.J. § 587, p. 438; 64 A.L.R. 185 anno.; 2 A.L.R.2d 659 and 661, anno. ▮ Though varying explanations of the reason for this rule have been given, it is a court made principle based upon considerations of public policy (*Estate of Dominici, supra*, 151 Cal. at 186; *City & County of San Francisco* v. *Superior Court*, 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]), and is limited to controversies between persons in privity with the testator's estate. Between persons claiming under testator and others who are not in privity with his estate the privilege survives. This is a generally accepted proposition. (64 A.L.R. 191, anno.; 2 A.L.R. 664, anno.) The rule is usually stated in terms of application to "strangers" or persons claiming adversely to the estate. But the question of who fall within this category is involved in some obscurity, especially in California. Whether one who claims under contract with or conveyance from the testator is a "stranger" within the rule has met

with diverse answers in the courts. The following cases[3] hold that such a person is not a stranger: *Phillips* v. *Chase*, 201 Mass. 444 [87 N.E. 755, 131 Am.St.Rep. 406]; *Eicholtz* v. *Grunewald*, 313 Mich. 666 [21 N.W.2d 914]; *Warner* v. *Kerr*, 216 Mich. 139 [184 N.W. 425]; *In re Estate of Brzowsky*, 267 Wis. 510 [66 N.W.2d 145, 67 N.W.2d 384]; *Hayes* v. *Pennock*, (Tex.Civ.App.) 192 S.W.2d 169; *Middletown Trust Co.* v. *Crowell*, 89 Conn. 290 [93 A. 785]; *Johnson* v. *Antry* (Mo.), 5 S.W.2d 405; *Boyd* v. *Kilmer*, 285 Pa. 533 [132 A. 709]; *Cummings* v. *Sherman*, 16 Wn.2d 88 [132 P.2d 998]. The leading case on this subject is *Russell* v. *Jackson* (1851), 9 Hare 387; 68 Eng. Reports 558. The contrary result was reached in *In re Smith's Estate*, 263 Wis. 441 [57 N.W.2d 727]; *Emerson* v. *Scott*, 39 Tex.Civ.App. 65 [87 S.W. 369]; *Flack* v. *Brewster*, 107 Kan. 63 [190 P. 616]. Numerous other authorities supporting both sides of the proposition are cited in the annotations in 64 A.L.R. and 2 A.L.R.2d, above cited, and in supplemental citations.

In California the first case on the subject appears to be *In re Bauer*, 79 Cal. 304, 312 [21 P. 759]. That was a contest over final distribution, decedent's son claiming as sole devisee and the widow under a homestead declaration upon alleged community property. It was held error to exclude testimony of the attorney who prepared the declaration of homestead. At page 312 the court said: "One other point remains to be considered. The attorney at law who drew the declaration of homestead, and was at the time apparently acting for the deceased and his wife in the matter, was interrogated on behalf of contestant as to whether the recital in the declaration of homestead was explained to Mrs. Bauer, if she understood it, what explanation was given, and what she knew about the matter. This was objected to on the ground that it called for a privileged communication between attorney and client, and was sustained and excepted to. The objection should have been overruled. When two persons address a lawyer as their common agent, their communications to the lawyer, as far as concerns strangers, will be privileged, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations." In effect the holding was that the son stood in the position of the deceased father with respect to the matter of privilege. Concerning this case the court said in *Smith* v. *Smith*, 173 Cal. 725, 733 [161 P. 495]:

---

[3]This list is by no means complete, merely illustrative.

"It will be remembered that in the Bauer case the contest was between a son asserting title to property as an heir and his mother claiming under a hom[e]stead, and it was held that the statements of his father and mother, made to the attorney who prepared the declaration of homestead were not privileged."

*Smith* v. *Smith, supra,* was an action to quiet title, etc., brought by the sons of Uriah Smith, deceased, against their stepmother Ella R. Dooley Smith. Plaintiffs claimed under two deeds which their father had placed in escrow to be delivered to them upon his death. Later he conveyed the same properties and others to Ella R. Dooley who thereupon married him. One of the issues was that of knowledge on her part of the escrowed deeds at the time she received her conveyance. Attorney Russell, who drew her deed, testified to a conversation with her and Uriah in which the fact of the existence of those escrowed deeds was mentioned. It was claimed that this was error as the conversation was privileged. The court said at page 732: "It is asserted also that Mr. Russell was attorney and common agent for both grantor and grantee named in the deed which he prepared, and that therefore the communications made to him when they were present were privileged so far as plaintiffs were concerned. There was no proof that Mr. Russell was acting for Mrs. Dooley. He was employed by Mr. Smith and acted under his orders. Nevertheless appellant contends that the statements of Mr. Russell come within the rule of privilege applying where, for example, an attorney acts for a husband and wife in preparing a declaration of homestead. (*In re Bauer*, 79 Cal. 304-312 [21 P. 759].) But that rule only operates against strangers. The sons claiming title under the deeds which have been placed in escrow were not within that category. 'It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client.' (40 Cyc., p. 2380.) Among the citations supporting this text are *Kern* v. *Kern,* 154 Ind. 29 [55 N.E. 1004], *Phillips* v. *Chase,* 201 Mass. 444-448 [87 N.E. 755, 131 Am.St.Rep. 406], and *Glover* v. *Patten,* 165 U.S. 394-406 [17 S.Ct. 411, 41 L.Ed. 760]." Then follows the observation about the Bauer case which we have quoted. This ruling seems to rest upon the theory that the sons, claiming under the deeds, were not strangers but were in privity with decedent and his estate.

*Collette* v. *Sarrasin,* 184 Cal. 283 [193 P. 571], throws con-

siderable doubt upon this conclusion however. It was an action brought by the sole heir of a decedent to have his grant deed to defendant declared to be a mortgage. The attorney who drew the deed was precluded by court rulings from giving any testimony as to the transaction, and defendant's attorney was prevented from making any offer of proof or any statement of what he expected to prove by the witness. The court, in reversing, held that the record as made did not disclose whether the relationship of attorney and client existed in fact or whether there was any confidential communication; that the rulings were reversible error. The court then added: "The mere fact that both parties claim under the deceased does not, in our opinion, make the communication admissible, for under our code (Code Civ. Proc., § 1881) the privileged communication cannot be received unless that privilege is directly or inferentially waived by the client." (P. 289.) Though *Smith* v. *Smith* is not mentioned this seems to be directed toward the argument presented by respondent in his petition for hearing in Supreme Court, which sought to explain away the Smith decision. The quoted language clearly was not necessary to the ruling, but, as it was responsive to an argument presented by counsel and probably intended for guidance of court and attorneys upon a new trial, it probably cannot be put aside as mere dictum. (*Cf. People's Lbr. Co.* v. *Gillard,* 5 Cal.App. 435, 439 [90 P. 556]; *Chamberlain Co.* v. *Allis-Chalmers Mfg. Co.,* 74 Cal.App.2d 941, 943 [170 P.2d 85]; 13 Cal.Jur.2d § 135, p. 666; *People* v. *Bateman,* 57 Cal.App.2d 585, 587 [135 P.2d 192].) Counsel have cited no later cases on this point and we have found none. Neither the Smith case nor Collette dealt with the administration of a decedent's estate; the Bauer decision did pass upon that very problem. But in all three instances the effect of death upon the privilege was expressly or impliedly presented. And we must assume that the Collette decision represents presently prevailing law of this state. It merely abolishes the concept that the privity of estate created by an *inter vivos* transaction is enough to do away with the privilege of attorney and client and leaves unimpaired the principle that in probate matters privity with the decedent's estate under administration is enough to render the privilege inoperative. As applied to the facts at bar it will appear that the necessary privity exists in at least one aspect of the litigation.

The dispute over the existence and ultimate ownership

of quasi-community property appears to be the major one in this case; and it extends to property standing in the name of each of the spouses. ▉ Counsel for petitioner contend that section 201.5 is unconstitutional when applied to separate property brought by the surviving husband from the State of Pennsylvania. But we apprehend that that question does not arise upon a deposition proceeding, the purpose of which is to develop facts bearing upon existing or potential issues. Moreover, one of the issues in this case is the existence of quasi-community property in the name of decedent and petitioner's succession to one-half of same; and no claim of unconstitutionality of section 201.5 is made with relation to that particular property.

▉ It is established law that section 201.5 does not convert into community property or otherwise reclassify during lifetime of the two spouses property falling within its description and brought here from a common law state. ▉ It is strictly a succession statute and has been upheld on that basis. (*In re Miller,* 31 Cal.2d 191, 196 [187 P.2d 722]; *Estate of Perkins,* 21 Cal.2d 561, 570 [134 P.2d 231]; *Logan* v. *Forster,* 114 Cal.App.2d 587, 597 [250 P.2d 730]; 16 Cal.Jur.2d § 52, p. 101.) Separate property of either spouse brought here from Pennsylvania remained during their joint lives the separate property of each, but upon death of either spouse (assuming constitutionality of application of 201.5 to the survivor's separate property) it was automatically reclassified as community property (if fitting the description of 201.5) for purpose of succession. ▉ The spouse who takes one-half under this section regardless of the will does so by succession or inheritance and irrespective of whether that half goes through the probate court. ▉ If Mr. Paley gets one-half of the wife's property within this class, or if her estate takes one-half of his separate property so reclassified for purpose of succession, it would be quite illogical to hold that he, Mr. Paley, is not in privity with the estate which absorbs or releases half of such property. He is in no different situation from one who takes as heir or legatee. And the rationale of the decisions which hold that the privilege does not prevail in a controversy between persons claiming under the decedent or through his or her estate is fully applicable here.

This issue of quasi-community property having opened the privilege it is opened fully as to conversations about the preparation of the will or the property upon which it is

to operate. As Professor Wigmore says in 8 Wigmore on Evidence (3d ed.), section 2314, page 613: "The confidence is not apportionable by a reference to what the testator might have intended had he known or reflected on certain facts which now bear against the will''; indeed, the privilege covering conversations about preparation or execution of the will or its subject property is not apportionable at all. The inquiry upon deposition as to the existence and extent of quasi-community property naturally leads to the question of the existence of property strictly community and the alleged oral agreement between the spouses transmuting into separate property of each spouse the assets standing in his or her name. Not only should questions concerning the existence and extent of quasi-community property be answered but also those which relate to community property and the claimed oral agreement of transmutation. Certain additional considerations emphasize the soundness of this conclusion.

█ The policy of this state is one of liberality in the matter of discovery (*Union Trust Co.* v. *Superior Court,* 11 Cal.2d 449, 459-460 [81 P.2d 150, 118 A.L.R. 259]), a policy which has been implemented by the deposition statutes which in turn are to be liberally construed. (*Ahern* v. *Superior Court,* 112 Cal.App.2d 27, 30 [245 P.2d 568].) █ Since the attorney-client privilege is grounded on public policy, it ''is strictly construed, since it suppresses relevant facts that may be necessary for a just decision." (*City & County of San Francisco* v. *Superior Court, supra,* 37 Cal.2d 227, 234.) Petitioner's claim of an agreement embraces only an oral one. █ Normally the evidence of such an understanding is within the keeping of the two spouses. While it may be established circumstantially (*Estate of Raphael,* 91 Cal. App.2d 931, 939 [206 P.2d 391]), the primary evidence would naturally come from Mr. Paley in this case. █ But such testimony of an oral agreement with a deceased person is subject to the closest scrutiny. (*Estate of Henderson,* 128 Cal.App. 397, 400-401 [17 P.2d 786]; *Turman* v. *Ellison,* 37 Cal.App. 204, 209-210 [174 P. 396]; 10 Cal.Jur.2d § 59, p. 734.) If perchance the deceased wife made admissions supporting the husband's claim such as the questions propounded to Mr. Fox imply, his case would be immeasurably strengthened by the attorney's testimony to that effect. If petitioner has a legitimate claim of oral agreement justice demands that he not be denied the benefit of the supporting evidence. (See *Estate of Smead,* 219 Cal. 572, 575 [28 P.2d

348].) If Mr. Fox' testimony proves to be unfavorable to plaintiff's contentions the cause of the defendant will undoubtedly be promoted thereby.

 Specific objection is made to certain questions upon the ground that they are too broad as to time covered and are not confined to conversations relating to the will. An exemplar is this one: "Q. Did Mrs. Paley ever say to you, or in your presence and hearing, in substance or effect, that she and Mr. Paley had years before had an understanding or agreement to the effect that his property would be his separate property and her property would be her separate property?" There is an intimation in the record that any such conversation may have been had in preparation for a divorce action or otherwise unrelated to the will. This question and all others set forth on page 10 of the petition herein, also the first two on page 11, are too broad; and they are objectionable in that their leading nature might elicit forbidden matter if answered affirmatively. For instance an affirmative answer to the quoted interrogatory might afford evidence which in fact remains privileged because a part of a divorce situation and not preparation of the will. But if plaintiff's counsel were able to get a "yes" answer to the question he would have valuable evidence the effect of which might not be eradicable. The witness should not be required to answer the question in that form. But it would be a simple matter upon resumption of the deposition for men of good will and much learning, such as counsel on both sides of this case, to narrow the matter to proper compass and elicit only that which is permissible under the principles herein stated.

We hold that the witness Fox should be by the superior court ordered to answer the questions set forth in footnote 4; that he should not be required to answer those which are

---

⁴ "Q. What was said at that time with respect to the disposition or proposed disposition of any property by Mrs. Paley?

"Q. Was this particular conversation had with reference to the execution or proposed execution of the will which has now been admitted to probate?

"Q. Are you able at this time to state the gist or substance of the conversations which you had with Mrs. Paley relating to the disposition or proposed disposition of any property whatever?

"Q. Was there any conversation or discussion which you had with Mrs. Paley relating in any way to the nature, extent or disposition of her property, or to the nature, extent or disposition of property over which she claimed any right, at which there were present anyone other than yourself and Mrs. Paley?

"Q. Will you state, Mr. Fox, the substance of the conversations or

copied in footnote 5, but should answer, and if necessary be required by court order to answer, properly formed questions designed to elicit the subject matter of such last mentioned inquiries without violation of the limitations of the right of interrogation as herein stated.

Let the writ issue accordingly.

Wood (Parker), Acting P. J., and Vallée, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied January 25, 1956. Shenk, J., was of the opinion that the petition should be granted.

---

discussions that you had with Mrs. Paley relating to the nature, extent, identification or disposition or proposed disposition of any property by her?''

[5]''Q. Did Mrs. Paley ever say to you, or in your presence and hearing at any time, in substance or effect, that there was no community property of the marriage between herself and Mr. Paley?

''Q. Did Mrs. Paley at any time ever say to you, or in your presence or hearing, that all of the property which Mr. Paley had was his own separate property, in substance or effect?

''Q. Did Mrs. Paley ever say to you, or in your presence and hearing, in substance or effect, that she and Mr. Paley had years before had an understanding or agreement to the effect that his property would be his separate property and her property would be her separate property?

''Q. Did Mrs. Paley at any time communicate to you orally any statement or declaration in substance or effect that there was no community property of the marriage between herself and Mr. Paley?

''Q. Did Mrs. Paley ever communicate to your otherwise than orally, any statement or declaration to the effect that Mr. Paley's property was his own separate property?

''Q. Did Mrs. Paley ever communicate to you in any way any statement or declaration in substance or effect, that she had no interest or right of any kind into any of Mr. Paley's property?

''Q. Do you know of any statement or communication by Mrs. Paley on any occasion, or to any person, in substance or effect of the kind to which I have just referred?

''Q. Will you please state the dates involved, the places at which they were held, the persons present and the substance of what was said at any conversation or discussion you may ever have had with Mrs. Paley as to the nature, extent or testamentary disposition of her property?''