DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[No. 15462.    In Bank.—January 28, 1895.]

## ISABEL SOBERANES, AN INCOMPETENT, ETC., APPELLANT, v. ABEL SOBERANES, RESPONDENT.

APPEAL—REVIEW OF CONFLICTING EVIDENCE.—Where the evidence is substantially conflicting the findings will not be disturbed upon appeal.

ID.—ACTION TO SET ASIDE CONVEYANCE—DEED FROM MOTHER TO ONE SON. An action will not be sustained to set aside a deed of conveyance of all the property of a mother to one of her sons, where it appears that, although the grantor was illiterate and ignorant of business outside of her household and domestic affairs, yet she had ordinarily good natural intellectual faculties, was of sound mind, and fully comprehended what she was doing when she executed the deed.

ID.—CASE AFFIRMED.—*Soberanes* v. *Soberanes*, 97 Cal. 140, affirmed.

APPEAL from an order of the Superior Court of Monterey County denying a new trial.

The facts are stated in the opinion of the court upon the former appeal (97 Cal. 140) and in the opinion of the court rendered in this case.

*D. M. Delmas*, and *Morehouse & Tuttle*, for Appellant.

The deed should be set aside, as the uncontradicted evidence shows that plaintiff was mentally incompetent at the date of the execution of the deed; that the deed was fraudulently obtained from the plaintiff, and was

CVI. CAL.—1                    (1)

procured by means of undue influence over the plaintiff by the defendant. (*Moore* v. *Moore,* 56 Cal. 92; *Crowther* v. *Rowlandson,* 27 Cal. 391; *Huguenin* v. *Baseby,* 2 Lead. Cas. Eq. 1206; *Kelly* v. *McGuire,* 15 Ark. 555; *Doughty* v. *Doughty,* 7 N. J. Eq. 291; *Cadwallader* v. *West,* 48 Mo. 483; *Brogden* v. *Walker,* 2 Har. & J. 292; *Boggs* v. *Hays,* 44 La. Ann. 859; *Mott* v. *Mott,* 49 N. J. Eq. 192; *Crips* v. *Towsley,* 73 Mich. 395; *Clark* v. *Kirkpatrick* (N. J. Eq., 1888), 16 Atl. Rep. 309; 2 Pomeroy's Equity Jurisprudence, secs. 947, 955, 956, 958; *Giles* v. *Hodges,* 74 Wis. 360; *Shaw* v. *Shaw,* 9 N. Y. Supp. 897; Bigelow on Fraud, 284, 285; *Soberanes* v. *Soberanes,* 97 Cal. 140; 1 Story's Equity Jurisprudence, secs. 235, 236, 307–23, 368; Pollack on Contracts, 558, 573; *Baker* v. *Loader,* L. R. 16 Eq. 49; *Todd* v. *Grove,* 33 Md. 188; *Williams* v. *Williams,* 63 Md. 371; *Whitridge* v. *Whitridge,* 76 Md. 54; *Brooke* v. *Berry,* 2 Gill, 83; Perry on Trusts, sec. 194; Bispham on Equity, sec. 237; *McDaniel* v. *McCoy,* 68 Mich. 332; *Burnham* v. *Mitchell,* 34 Wis. 137; *Commonwealth* v. *Schneider,* 59 Pa. St. 328; *Darby* v. *Hayford,* 56 Me. 246; *Wray* v. *Wray,* 32 Ind. 126, 130; *Morton* v. *Morton* (N. J. Ch., April 9, 1887), 8 Atl. Rep. 808.)

*Myrick & Deering,* and *Alexander & Dougherty,* for Respondent.

No error being claimed to have occurred on the trial, and none being specified, and the findings having been held sufficient to support the judgment in 97 Cal. 140, and the appellant having failed to show any particular in which the evidence does not justify the decision, the order denying the motion for a new trial should be affirmed. (See *Soberanes* v. *Soberanes,* 97 Cal. 140.)

McFARLAND, J.—This action was brought in the name of Isabel Soberanes by Benito Soberanes, who, for that purpose, procured himself to be appointed her guardian *ad litem,* to set aside a deed of conveyance of land executed by said Isabel to the defendant, Abel Soberanes, on the ground of her mental incapacity and undue in-

fluence of said defendant.    Judgment went in the supe-
rior court for defendant, and this present appeal is from
an order denying plaintiff's motion for a new trial.
There was also an appeal by plaintiff from the judg-
ment, which was determined here in favor of defendant.
(*Soberanes* v. *Soberanes*, 97 Cal. 140.)

The findings are very full, and on the appeal from
the judgment the case was considered in nearly all its
aspects in the opinion delivered by Mr. Justice Paterson,
the law applicable to it declared, and the conclusion
reached that the findings supported the judgment.    Ap-
pellant contends that, upon an appeal from an order
denying a new trial, a former decision on an appeal
from the judgment does not establish the law of the
case; but, however that may be, we are satisfied that the
views expressed in the opinion on the former appeal
are correct.    The only question, therefore, to be consid-
ered on this present appeal is the sufficiency of the
evidence to sustain the findings.

To hold that the evidence does not warrant the find-
ings would be to plainly violate the rule that we will not
here weigh evidence that is really and substantially con-
flicting.    That rule is, to some extent, founded on the
fact that the trial judge has the opportunity of having
the witnesses in person before him; and the advantage of
seeing and observing, and to some extent at least *know-
ing*, the witnesses, is very important in such a case as
the one at bar.    Here was a family quarrel; and the
members of the family were before the judge exhibiting
their manners, tempers, interests, prejudices, and char-
acters in forms which cannot be brought here in a
printed transcript.    We do not see any thing in the evi-
dence that would warrant us in disturbing the findings;
and it would be a useless work to reproduce the evidence
here.    Indeed, the findings themselves show very fully
what the evidence was—that is, no important or con-
trolling fact can be deduced from the evidence that does
not appear in the findings.    In fact, the real question
in the case is and always has been: Do the findings sup-

port the judgment? But that question was determined in the affirmative on the former appeal in an elaborate opinion in which the whole case was fully stated and discussed; and, as we have said, we think that it was correctly determined. The two main questions of fact were: Was Mrs. Soberanes mentally capable of executing the deed? and was she fraudulently procured to do so by the undue influence of the respondent? And we cannot say that the evidence did not warrant the court in answering the former question in the affirmative, and the latter in the negative. This is not a case where a woman had made a conveyance similar to the one here involved, and where afterwards she herself had asked to have it set aside on account of fraud or undue influence. Mrs. Soberanes did not bring this action; it was brought and has been prosecuted against her wishes. The execution of the conveyance to the defendant was in pursuance of an intention so to do long entertained by her; and she afterwards repeatedly expressed her satisfaction with it. Jose Soberanes, brother of her deceased husband, testified, among other things, as follows: "She said that when Francisco, her husband, died the part that she would inherit of the property she would give to the son, or sons, who respected and took care of her; she repeated this at her house almost every time I went to visit her, both before and after her husband's death." This witness also testified that after the execution of the deed he asked her: "How is it that you have sold every thing to Abel and given your other children nothing; what is your motive? And she answered that the reason she had for giving every thing to Abel was because a long time before her intentions had been to give every thing to Abel; that Abel was the one that always cared for her, and that Abel was her son, her father, her husband, and was every thing in the world to her, and that her other children did n't do any thing for her, and that she did n't give any thing to her other children because they did n't respect her or attend her." About a month after the execution of the deed, when she was sick, her

spiritual adviser remonstrated with her about giving nothing to the other children, and she said she would do the same thing "an hundred times." He testified that "in talking with the lady I told her, in substance, this, that before the judgment of God she ought to treat the children all equally, and what for you did so; you left every thing to your son Abel, and not to your sons; and she gave me the reasons, and in consequence I found the reasons logic, and I considered as spiritual adviser I had no more to say." The evidence showed, as the court found, that she was an illiterate woman, and ignorant of business outside of her household and domestic affairs; but there was evidence that she had ordinarily good natural intellectual faculties, was of sound mind, and fully comprehended what she was doing when she executed the deed. Under these circumstances we cannot interfere with the findings of the court below. Whether or not it was a proper and commendable thing for her to give all her property to one of her children is not a question for courts; that question was with her alone.

The order denying a new trial is affirmed.

GAROUTTE, J., HARRISON, J., and VAN FLEET, J., concurred.

Rehearing denied.

On the twenty-eighth day of February, 1895, BEATTY, C. J., filed the following opinion on the application for a rehearing:

BEATTY, C. J.—As I did not participate in the decision of this cause I take occasion, in passing upon the petition for a rehearing, to state briefly the grounds upon which I concur in the judgment, and in the order denying a rehearing.

As stated in the opinion of the court, this is not a case in which the donor herself seeks to invalidate a gift. The action is prosecuted in her name by a guardian *ad litem* and against her wishes. If she had com-

menced the action herself, or had consented to it, or had in any way manifested a desire to set aside her conveyance, her prayer, I think, must have been granted upon the ground that the gift was of her whole estate without any reservation or power of revocation; that it was made upon the understanding that she should be supported and cared for by her donee, and that no provision or condition for her support was contained in the grant, or in any written agreement; and for the further reason that her donee occupied towards her a relation of special trust and confidence; and that she had no independent advice.

But it appears very clearly that since she has had independent advice, and, with a clear understanding of the situation in which she is placed, she desires the gift to stand.    This being so, she cannot, if she is now capable of acting for herself, be compelled against her will to take it back.

The question then is, whether she is at present, or was at the time of the trial, capable of acting for herself.

It seems to be contended by counsel that the order of the lower court appointing a guardian *ad litem*, as long as it stands unrevoked, is conclusive of her want of capacity.    But I do not so regard it.    If the proceeding and order had been for the appointment of a general guardian on the ground of her incapacity it might have had such effect.    But here the guardian was merely appointed as a step in this action, and the findings of the court made at the close of the trial, and after a full hearing—if they amount to a finding that she had the capacity to dispose of her property—completely do away with the effect of the findings, express or implied, upon which the order appointing the guardian *ad litem* was based.

As I construe the findings of the court (and so construed there is, in my opinion, sufficient evidence to sustain them), they declare, in effect, that the plaintiff was, at the date of her conveyance, and at all times

thereafter, of sufficient capacity to make the gift.    They are as follows:

" On, and long prior to May 24, 1890, ever since, and now, said plaintiff was, and still is, old, uneducated, and illiterate.    She has never at any time been able or competent to attend to, understand, or transact the ordinary business of life, except such as related to housewifery and the management and control of the domestic affairs of her own family and household.    In this last-named respect she is, and ever has been since her intermarriage with her husband, the head of her domestic household, and has always discharged the duties of such position with full competency, wisdom, and prudence.

" She has never at any time been intrusted with, nor did she ever undertake to do or transact, any affair relating to business other than such as was exclusively incident to the ordering and government of her domestic household; and in this latter connection she never transacted any business with respect to buying or selling, or disbursing or receiving money.

"At the time of the execution and delivery of said conveyance of land and transfer of cattle, and long prior thereto, plaintiff was not insane, nor were her mental faculties impaired to an extent greater than what is usually expected and normally found in persons of advanced age.    She was not, and is not, by reason of age, disease, weakness of mind or body, or any undue influence or control exercised over her by any one, mentally incompetent and incapable of conveying her property by deed.    Nor was she then, nor at any time, unable to comprehend or understand the nature, character, and effect of the transactions named in the thirteenth finding.    Nor was she then, nor at any time, deceived, imposed upon, or misled by the artful designs and representations of the defendant or any person.

" But plaintiff was then, and is now, by reason of her ignorance, illiteracy, and want of knowledge of business affairs and methods, and her lack of experience in all kinds of business (except such as relate to inner house-

hold duties), unable, unassisted, to properly manage or take care of her property, and by reason thereof she was and is liable to be deceived and imposed upon by designing persons in the transaction of business respecting her property interests and rights."

The plaintiff has never been able to transact or understand the ordinary business of people engaged in business pursuits. She knows nothing about trading or carrying on a ranch, but with respect to that which is and has always been to her the ordinary business of life, viz., the management and control of the domestic affairs of her family and household, she has displayed full competency, wisdom, and prudence. She is, in other words, not deficient in intellect or natural capacity; at least not in that degree that requires the appointment of a general guardian, but is merely incapable, by reason of ignorance and lack of experience, of managing a ranch, or of conducting any business in which special knowledge and experience are essential.

It is suggested by counsel for appellant that upon this view of the case the proper judgment for the superior court to have made was a mere judgment of dismissal of the action instead of a judgment on the merits, and they ask us to direct a modification of the judgment accordingly. But on this appeal from the order denying a new trial we cannot order a modification of the judgment.