[S. F. No. 9171.   Department Two.—March 26, 1920.]

In the Matter of the Estate of YSABEL BORONDA DE
SOBERANES, Deceased.

[1] ESTATES OF DECEASED PERSONS—WILL—UNDUE INFLUENCE—RE-
LATIONSHIP OF MOTHER AND DAUGHTER.—Undue influence in the
execution of a will by a mother in favor of her daughter is not
to be presumed from the mere existence of the relationship between
them.

[2] ID.—WILL CONTEST—UNDUE INFLUENCE—EVIDENCE—PROPER NON-
SUIT.—In a will contest on the ground of undue influence, a non-
suit is proper where it is affirmatively shown that no undue
influence was exercised and that the testatrix was acting under in-
dependent legal advice.

---

1.   Undue influence as affecting the validity of wills, note, 31
Am. St. Rep. 670.

Presumption of undue influence, note, 21 Am. St. Rep. 94.

Burden of proof as to undue influence, notes, 17 L. R. A. 494; 36
L. R. A. 724, 733.

[3] ID.—EVIDENCE—FRIENDLY RELATION BETWEEN TESTATRIX AND DIS-INHERITED CHILDREN.—In a will. contest, the exclusion of certain evidence bearing upon the friendly relation between the testatrix and her disinherited children is not prejudicial to the contestant where the children testified that the relations were friendly.

[4] ID.—WEAKNESS OF MIND OF TESTATRIX—CONCLUSIONS OF WIT-NESSES.—In a will contest the weakness of the mind of the testatrix may be shown upon the issue of undue influence, but it cannot be shown by questions calling for conclusions of the witnesses.

APPEAL from a judgment of the Superior Court of Monterey County. Benj. K. Knight, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Z. B. Stuart, C. W. Byrer and J. W. Hocker for Appellant.

C. F. Lacey for Respondent.

WILBUR, J.—This is a contest of the will of Ysabel Boronda de Soberanes, within one year after probate, by Porfirio Soberanes, her son, upon the grounds that the will was not properly executed, that the testatrix was of unsound mind, and that the will was executed under undue influence. The first ground of contest was withdrawn, and a motion of nonsuit was sustained as to the others. The contestant appeals from the judgment, claiming that the evidence was sufficient to establish a prima facie case for the jury. The testatrix died February 19, 1916, aged eighty-four years. By the terms of her will she left all of her property to her daughter Clotilda, with whom she was residing at the time of the execution thereof. The husband of testatrix died in 1887. Thereafter the testatrix deeded her inheritance to her son Abel. These transfers were unsuccessfully attacked by the other children (Soberanes v. Soberanes, 97 Cal. 140, [31 Pac. 910]; Id., 106 Cal. 1, [39 Pac. 39, 527]), acting through Isabel Soberanes as guardian ad litem for the mother. In 1896 Abel died, devising the land so conveyed to his sister Clotilda, subject to an annuity of three thousand dollars in favor of the mother. A general guardian was thereafter appointed for testatrix

in 1896, and she remained under such guardianship until
April 13, 1901, when the guardian was discharged and she
was restored to capacity. Shortly thereafter the will under
attack was executed (November 23, 1901). About a year
later the testatrix waived the annuity in favor of the
daughter Clotilda by instrument executed August 13, 1902,
recorded September 3, 1902, and by a deed of the same
date, recorded September 10, 1902, the testatrix conveyed to
the same daughter her interest in certain real property.
Thus the only estate left by the testatrix was $372.70. The
surviving children of the testatrix were Benito A. Sober-
anes, a son sixty-five years of age, the contestant Porfirio, a
son fifty-eight years of age, Josefa Soberanes de Boronda, a
daughter fifty-five years of age, and Clotilda Soberanes,
a daughter about fifty years of age. There were also three
children of a deceased son, Jose Feliciano Soberanes. The
son Benito contested the will before probate. Without
quoting the will in full, it states that the testatrix leaves all
her property to her daughter Clotilda, with whom she is
living and expects to live until her death; that since the
death of her son Abel this daughter is the only member of
the family with whom she has been happy; that the
daughter and her husband have "spared neither time nor
money to make life pleasant and agreeable to me, . . .
often receiving little or no pecuniary compensation for
money and labor expended in my behalf, and by reason of
their kindness to me drawing upon themselves the hatred
of my other children." Testatrix gives as a reason for dis-
inheriting her other children the fact that by "their unfilial
conduct by continually harrassing me in the courts year
after year, suit following suit, willing to squander their
own fortunes in attempting to deprive and for several years
depriving me of the control of mine causing me great finan-
cial loss, ungrateful to me when I have helped them, those
whom I have helped the most being if possible the most
violent toward me, heedless and thoughtless of me in my
loneliness, with never a kind or loving word or act for me
in my old age and double bereavement of husband and son,
and, apparently at least without ever a thought for my
happiness or welfare they have filled my life with bitter
sorrow which time cannot efface." The will was drawn by
an attorney, in accordance with the instructions of the

testatrix, and was signed in the presence of three witnesses. The only connection of the daughter Clotilda or her husband with the transaction was that they brought her to the attorney's office and paid his fee for drawing the will, the mother having declared her intention of making a will and leaving to them her property. So far as appears from the evidence they had no conversation with the attorney. The will was executed out of their presence. Subsequently the attorney showed them the will, but retained possession of it until the death of the testatrix, thereupon producing it for probate. The statements in the will concerning litigation among members of the family is substantiated by the testimony, the first litigation being an effort to set aside the deed from the mother to the son Abel of property which Abel subsequently bequeathed and devised to his mother. (*Soberanes* v. *Soberanes, supra.*) For the last sixteen years of testatrix' life the son Benito did not call upon the mother. Clotilda testified that the will was made by the mother of her own motion and in accordance with her own wishes, without any suggestion from herself or her husband, and that the mother frequently expressed a desire to leave the property so that there would be no further trouble. No witness testified that the testatrix was of unsound mind. The son Benito stated that he did not claim, and never had claimed, that his mother was insane, and that he so testified at the trial of his own contest, "but I declared that she was incompetent." In response to a question, "What do you mean by that?" he replied, "She could not read or write or count or calculate in any shape or form." He further testified: "She had no knowledge of business, could converse intelligently, but when it came to business she couldn't count ten." There was also testimony by the contestant and some of the other members of the family that the relations of the mother and the children were friendly. Appellant claims that, under the circumstances, a presumption of undue influence arose against the will which necessitated a submission of that question to the jury. **[1]** This matter is so fully discussed in two comparatively recent cases involving the relation of mother and son (*In re Kaufman,* 117 Cal. 288, [59 Am. St. Rep. 179, 49 Pac. 192]; *Estate of Ricks,* 160 Cal. 460, [117 Pac. 532]) that we deem further discussion unnecessary. **[2]** Suffice it to say that

in this case, where there was affirmative proof that no undue influence was exercised, where the evidence shows that the testatrix was acting under independent legal advice, there was nothing to submit to the jury, and the action of the court in sustaining a nonsuit was proper.

The appellant makes various assignments of error in the rejection of testimony. These assignments are grouped in the brief under two heads: First, rulings excluding certain evidence bearing upon the friendly relation between the mother and children. [3] As they had testified that such relations were friendly and such testimony was binding upon the court upon a motion for nonsuit, the appellant was not prejudiced by these rulings. The other rulings are grouped under the claim that they were erroneous for the reason that contestant had a right to show the weakness of mind of the testatrix upon the issue of undue influence. [4] There is no doubt of the correctness of the rule invoked, but an examination of the specific questions asked and objections made show that most of them called for conclusions, which were not proper to be offered in evidence. No effort was made to prove by intimate acquaintances the unsoundness of mind of testatrix, and the specific questions to which objections were sustained were not proper; such, for instance, as the following: "From your association, knowledge, and acquaintanceship with Mrs. Soberanes in 1901, was she competent to transact business for herself and understand business dealings?" This question called for a conclusion of the witness and the objection thereto was properly sustained.

Judgment affirmed.

Kerrigan, J., *pro tem.*, and Lennon, J., concurred.