[Civ. No. 8634. Second Appellate District, Division One.—December 19, 1932.]

In the Matter of the Estate of GEORGE B. HORTON, Deceased. CHARLES ALBERT HORTON, Appellant, v. WALTER E. HEWITT et al., Respondents.

Edwin J. Miller and Will R. King for Appellant.

Haygood Ardis, Paul Vallee, J. H. Ardis and Mott, Vallee & Grant for Respondents.

HOUSER, J.—In the year 1868, A. D., George B. Horton, who at that time was a married man of approximately twenty-six years of age, accompanied a considerable number of other persons on a wagon-train from the town of Burleson, Texas, to a destination in the state of California now known as the city of Compton. The wife of George B. Horton remained with her parents at their home in Texas. In the course of many years following their arrival in California, George B. Horton and his younger brother Albert, working together in their several enterprises, accumulated considerable real and personal property, all of which, with the exception of $90,000 in cash, which was deposited in a bank in the joint names of the two brothers, was carried in the name of the brother Albert. In the month of May, 1930, Albert died, and six weeks later George also passed to his reward. About sixteen months preceding the death of George each of the brothers executed a will, by the terms

of which, in substance, it was provided that on the death of the testator all his property should pass to his said brother; or, in case of the prior decease of such brother, to the nephew of the testator, Walter E. Hewitt, and his niece, Della Maud Berryman, "share and share alike". About one week after Albert's death, George made a codicil to his former will by which he expressly disinherited his wife whom many years before he had left in the state of Texas, as well as any son or daughter born to his said wife as the result of the marriage of the testator to her. As hereinbefore stated, five weeks thereafter, George died. Thereupon Charles Horton, who was shown to be a son of said George B. Horton and the wife whom the · latter had left in Texas, instituted a contest of the said will and its annexed codicil. In substance, the grounds of such contest were:

(1) That at the time he executed his will and the codicil thereto, George B. Horton "was not of sound and disposing mind and memory";

(2) That at each of said times, and for many years prior thereto, the testator had been afflicted with, and was laboring under, an insane delusion as to the contestant;

(3) That the said will and its codicil were, and each of them was, the result of an undue influence exercised upon the testator by his brother Albert, his nephew W. E. Hewitt, and his said niece Della Maud Berryman;

(4) That the execution of said will and the said codicil were, and each of them was, brought about by a conspiracy among the said three last-named persons; and

(5) That the execution of said will and its codicil were, and each of them was, induced by fraud practiced upon the testator by said Albert, W. E. Hewitt and Della Maud Berryman.

On the trial of the action, following the introduction of evidence by contestant relative · to each of the several grounds of contest, on motion of the proponents of the will and codicil the trial court ordered a nonsuit and dismissed all of the said several grounds of contest, excepting only the first thereof, which, as hereinbefore indicated, was that George B. Horton "was not of sound and disposing mind and memory" at the time he executed the instruments in question. Thereafter, in due course in the proceedings of the action, judgment was rendered in favor of the pro-

ponents and against contestant. It is from such judgment that the instant appeal is prosecuted.

The first point advanced by appellant is that, as far as the issue of undue influence was affected thereby, the trial court erred in granting the motion for a nonsuit. In this connection it is important to remember that as propounded for probate the will consisted of two parts, namely, the original document, or will proper, together with its additional instrument, denominated a codicil. ▉ In a situation such as is here presented, with reference to the question of whether an attempted direction by a testator of the disposition of his property has been unduly influenced by another person, the law is well established that, excepting only as clearly is made to appear to the contrary, a codicil to a will is an affirmation of the provisions contained in the former testamentary declaration. And since it is here conceded that by no provision or term of the codicil was any attempt made by the testator to change or to modify either the manner or the extent of the testamentary disposition contained in the will proper, it follows that to all intents and purposes the question of whether the will and its codicil, considered as a single instrument, was induced by the undue influence of any person or persons exerted upon the testator, must be considered and determined solely by reference to the acts of such person or persons as they related to or bore upon the execution of the codicil. In other words, as far as is here material, the acts, general conduct and declarations of the several interested persons, together with other relevant evidence, if any, which in any substantial manner affected the execution of the codicil only, provide the data upon which must rest a legal determination of the question of whether in the execution of the instrument the testator was unduly influenced. However, notwithstanding the fact that the ultimate question is thus apparently narrowed, the evidence by means of which a correct decision may be reached should not be necessarily confined to the immediate moment at which the signature of the testator was attached to the instrument. Within reasonable limits of time, whether occurring with direct relation either to the codicil or to the original will, any fact which tends to establish the allegation that in the execution of the codicil the testator was unduly influenced is relevant and

admissible in evidence. And so, although whether at the very moment when he attached his signature to the codicil the testator was unduly influenced by any person or persons so to do is the ultimate issue of fact, evidence which tends to establish the fact that in the execution of the original will his desires in the premises were cast aside and in their place the wishes of some other person or persons were substituted becomes relevant and material.

Likewise, it is a general rule that a motion for nonsuit should be granted only when the case as produced by the plaintiff is entirely lacking in substantial evidence which tends to establish the indispensable and determinative issue of fact presented by the pleadings in the action. (*Estate of Ivey,* 94 Cal. 576 [271 Pac. 559], and authorities there cited.) But on reflection it becomes apparent that the rule thus broadly stated is incapable of universal and strict operation. The purpose of the plaintiff in the introduction of evidence in an action is to establish the ultimate fact proposed to be proved. If such evidence is not relevant, that is, if it has no tendency toward that end, it has no proper place in the case. In other words, in order to be legally admissible, the offered evidence must *tend* to establish the ultimate fact upon which the asserted right of the plaintiff depends. At the same time, it must be substantial in its nature; that is to say, it should be positive in character, not dependent upon conjecture or hearsay, or be subject to any infirmity which will or may detract from its proper inference. But manifestly the mere existence of various and sundry pertinent or substantial items of evidence which, considered either singly or in their combined effect, are capable of logically producing an inference not bearing directly upon the ultimate fact sought to be established, will not suffice as a compliance with the requirement that the assumedly established fact need but *tend* to prove the ultimate fact in issue. As hereinbefore intimated, all facts, however apparently weak, insignificant or lacking in weight or importance, properly admissible in evidence, have some *tendency* to establish the case upon which the asserted right of the plaintiff depends; and to say that the introduction in evidence of any substantial fact which even remotely *tends* to prove the plaintiff's case will effectually prevent the granting of a motion for a nonsuit, is the equivalent of a

declaration that a nonsuit may rarely, if ever, legally be adjudged. As an example of facts which substantially tend to establish the plaintiff's case, but which might not be sufficient in that regard, let us assume an action for the recovery of damages to personal property arising from the collision of two automobiles. Let it be assumed that preceding the date of trial the plaintiff, who was driving his own automobile, unaccompanied by any other person, has deceased; that the defendant is outside the jurisdiction of the trial court; and that there are no witnesses to the happening of the accident. However, on behalf of the plaintiff the facts are established that at the time when the accident occurred the defendant was under the influence of intoxicating liquor; that habitually he was a careless driver; that at a distance one-half mile before reaching the scene of the accident the defendant was driving his automobile recklessly and at an excessive and unlawful rate of speed; and that after the accident the defendant attempted to conceal his identity by assuming for himself a fictitious name. It is clear that, even conceding (but not deciding) the relevancy and the admissibility of each of such facts; also that, considered either singly or together, they tend to establish the negligence of the defendant in causing the accident of which complaint is made—they do not directly reach the real issue in the case. One might guess or surmise that the accident in question arose solely by reason of the negligence of the defendant; but a judgment in favor of the plaintiff should not be permitted to rest upon such a foundation. In order to avoid the granting of a motion for nonsuit, the evidence should be not only substantial in its nature and character, but it should bear directly upon the issue before the court. To establish merely the existence of general, or even special, conditions which, if suitably correlated and synchronized, might, or probably would, yield to an inference helpful to plaintiff's theory of the case, will not suffice. The evidence must tend directly to establish the determinative and ultimate fact at issue. And that principle has been so repeatedly and universally applied in the courts of this state to will contests in which have been involved the issue of undue influence that a complete list of the authorities to that effect would be a superfluity.

In substance, the rule has been announced and many times

reiterated that in the absence of evidence showing a pressure operating directly upon the testamentary act by means of which the volition of the testator was overcome and entirely subjugated to that of another, mere proof of conditions in effect showing opportunity on the part of another person or persons to exert such an influence, even when coupled with a beneficial interest or motive so to do, will not suffice to sustain a finding of undue influence. (*Estate of Nelson*, 132 Cal. 182, 194 [64 Pac. 294]; *Estate of Morcel*, 162 Cal. 188 [121 Pac. 733]; *Estate of Purcell*, 164 Cal. 300 [128 Pac. 932]; *Estate of De Soberanos*, 182 Cal. 525 [189 Pac. 103]; *Estate of Anderson*, 185 Cal. 700 [198 Pac. 407], and authorities in each of such cases respectively cited.)

■ Without detail, but in summarization of the facts adduced by contestant relative to the issue of undue influence, and, of course, for the purpose here involved, without considering the question of the truthfulness thereof, it appears that in general they consisted in the disclosure of a situation which surrounded the testator not only at the time when the codicil was executed, but as well when the testator executed the original will, and for many years antecedent thereto—which in gross showed nothing more than general conditions which might be interpreted as favorable to the exertion of the alleged undue influence upon the testator, coupled with opportunity and motive on the part of interested persons to exert undue influence on the testator in the matter of making testamentary disposition of his property. It follows that the alleged error of which complaint is here made cannot be sustained.

As hereinbefore has been indicated, the contest which was filed by Charles Horton contained two separate counts by each of which the mental capacity of the testator to make the will and the codicil in question was challenged. By the first of such counts in substance it was charged that at each of the times when the will and the codicil respectively was executed, the testator "was not of sound and disposing mind and memory". And in substance the allegation of the second of such counts was that on each of such occasions the testator was affected with and was laboring under, an insane delusion as to contestant. ■ At the close of the case in chief by the contestant, on motion of the proponents

the trial court ordered a nonsuit as to the said second count, and such order is here made the basis of one of appellant's attacks on the judgment.

As constituting the insane delusion of the testator, the effect of that which was attempted to be proved by contestant on the hearing was that because of an unfounded belief in the mind of George Horton that his wife refused to go with him from the state of Texas to the state of California, he had an extreme dislike and hatred for and prejudice against her, which extended from her unto his son and which resulted in the disinheritance of the latter.

In order that an alleged insane delusion of a testator may result in the denial of probate of his will, such delusion necessarily must have operated upon and directly caused the inclusion in the will of the testamentary provision in question; and it must be shown that such delusion was spontaneous, that is to say, without any basis or foundation, either in reason, in fact or in any evidence, however slight; that in such circumstances the said delusion was persistently and continuously adhered to by the testator against and contrary to reason, facts and evidence, up to and including the instant of the execution of the will; and that in reliance upon and as the result of such spontaneous belief or delusion, the testator executed the will propounded for probate. (26 Cal. Jur. 676 et seq., and authorities there cited.)

Tested by such requirements, an examination of the evidence produced by the contestant prior to the making of the order by the trial court by which the motion for nonsuit as to the "insane-delusion" ground of contest of the will in question was granted, disclosed such a state of facts as warranted the belief in the mind of the testator, as expressed by him in his will, that "my said wife refused to leave the state of Texas and accompany me to California; and she never lived with me after I left Texas, and she never came to California to my knowledge. I have never seen her since we separated in Texas. . . . "

It is conceded that the wife of the testator did not accompany him from the state of Texas to the state of California; that she never lived with the testator after that event occurred; that she never came to California; and that he never saw her after they separated in the state of Texas. As shown by the record herein, the wife remarried within

five or six years after the testator left the state of Texas, and died more than forty years before the will in question was executed. Considering the fact that in 1868 a period of nine months was required to make the trip by wagon-train from Texas to California, and that even assuming an early opportunity to do so, at least a similar length of time would be required in order to make a return trip; that there possibly existed a lack of available funds by George Horton necessary for the immediate transportation of himself to Texas and return to California by himself, his wife and his child; that in all probability before his wife remarried, a divorce was obtained by her from George Horton, and that following the divorce and preceding her second marriage some time elapsed during which she was courted by the man whom she married—all of which may have become known to George Horton—it is little wonder that he entertained some resentment of her actions and conduct toward him. The sole fact upon which the so-called insane delusion of the testator depended was whether the wife of the testator ''refused to leave the state of Texas'' and accompany the testator to this state. It would be a useless task to herein state the evidence which related to that ultimate fact. It is sufficient that at least the dependent facts and circumstances which surrounded the preparation by the testator for his departure from the state of Texas, together with the facts which were shown by the evidence to have thereafter occurred, either immediately or within a few years next ensuing, were such as to entirely refute a conclusion that the belief in the mind of the testator that his wife ''refused to leave the state of Texas and accompany me to California'' was spontaneous and without basis or foundation in fact. But aside from such a situation, the attention of this court has been attracted to no evidence which would warrant the inference that any insane delusion which, had it existed, possibly might have affected the testamentary disposition in favor of the wife, either could have reacted, or probably did react, unfavorably as far as any devise or legacy by the testator to the contestant was concerned. At the time the will was executed the son of the testator was a man more than sixty years of age; the wife of the testator had been dead for more than forty years; and in the absence of direct evidence to that effect, to assume that because the

testator insanely believed that his wife had refused to accompany him from the state of Texas to the state of California was the cause of the disinheritance of the son, would be equivalent to the founding of a judgment on pure conjecture.

With reference to each of the grounds of contest designated as "fraud" and "conspiracy", very little pertinent evidence was introduced. So meager was it that in no legal sense may it be deemed sufficient to support a judgment. To set it forth herein, or even to summarize it, would simply be a waste of time and energy. Suffice it to say that in that regard, in the opinion of this court, no error was committed by the trial court in directing its order of nonsuit.

Appellant complains that on the trial of the action errors were committed in that evidence of certain facts was refused admission; and, on the other hand, that certain other evidence was erroneously admitted. In each of several of the instances first referred to it appears that in substance and effect the formerly excluded evidence was afterward admitted; in some of the others, clearly the rulings of the trial court were properly made.· It is possible that as to some of such specifications of error appellant's position is well taken; but assuming that in every instance of alleged error in that regard appellant is right, it does not follow that because of such errors he is entitled to a new trial. Considered either singly or in combination one with the other, it is not conceivable that the action of the trial court of which complaint is made had any effect upon the final result; in view of which situation it follows that a new trial should not be granted. (Sec. 4½, art. VI, Const.)

Appellant further contends that there were "erroneous rulings on instructions". It may be that by excerpting a portion of a given instruction, or even by taking some entire instruction, and considering such excerpted portion, or such entire instruction, by itself it will be found either too narrow or too broad in its statement of the law with reference to its subject matter; also that certain instructions offered by appellant correctly stated the law applicable to the situation with which they deal. But it has long been established law that instructions must be considered as an entirety; and that if so considered, it appears

that some point of law, improperly omitted from an instruction given to the jury, has been covered in some other instruction which has been submitted for the consideration of the jury, and that the jury could not have been misled by the omission which occurred in the instruction of which complaint is made, the error will be deemed to have been cured. And the principle likewise applies where the law contained in an offered instruction refused by the court is included in some other instruction which is given to the jury. On examination of the instructions, taken as a whole, it satisfactorily appears that the law which governs and controls in a situation such as was presented by the evidence herein was fairly, reasonably and clearly submitted to the jury for its guidance in reaching a verdict in the case. It follows that, on the ground of error either in the giving or in the refusing to give to the jury certain designated instructions, the appellant has no just cause for complaint.

No other alleged errors are worthy of serious consideration by this court.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 16, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 16, 1933.